ORIGINAL

## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>COACH AM GROUP HOLDINGS CORP., _et al._[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 12-10010 (KG)<br><br>(Joint Administration Requested)<br><br>**Re: Docket No. 12** |

### FINAL ORDER PURSUANT TO 11 U.S.C. §§ 105(a), 363, 364, 1107 AND 1108 AUTHORIZING PAYMENT OF PREPETITION CLAIMS OF CERTAIN CRITICAL VENDORS

Upon consideration of the motion (the "**Motion**")[2] of the Debtors for entry of interim and final orders, pursuant to sections 105(a), 363, 364, 1107, and 1108 of the Bankruptcy Code and Bankruptcy Rules 6003 and 6004, for entry of an interim and final order (i) authorizing, but not directing, the Debtors to pay, in their discretion, the prepetition claims of certain vendors critical to the Debtors and (ii) scheduling a final hearing; and upon consideration

---

[1]     Coach Am Group Holdings Corp. (4830); Coach Am Holdings Corp. (1816); Coach America Holdings, Inc. (2841); American Coach Lines, Inc. (2470); America Charters, Ltd. (8246); American Coach Lines of Atlanta, Inc. (4003); American Coach Lines of Jacksonville, Inc. (1360); American Coach Lines of Miami, Inc. (7867); American Coach Lines of Orlando, Inc. (0985); Coach America Group, Inc. (2816); B & A Charter Tours, Inc. (9392); Dillon's Bus Service, Inc. (5559); Florida Cruise Connection, Inc. (9409); Hopkins Airport Limousine Services, Inc. (1333); Lakefront Lines, Inc. (5309); The McMahon Transportation Company (0030); Midnight Sun Tours, Inc. (2791); Royal Tours of America, Inc. (2313); Southern Coach Company (6927); Tippet Travel, Inc. (8787); Trykap Airport Services, Inc. (0732); Trykap Transportation Management, Inc. (2727); KBUS Holdings, LLC (6419); ACL Leasing, LLC (2058); CAPD, LLC (4454); Coach America Transportation Solutions, LLC (6909); CUSA, LLC (3523); CUSA ASL, LLC (2030); CUSA AT, LLC (2071); CUSA AWC, LLC (2084); CUSA BCCAE, LLC (2017); CUSA BESS, LLC (3610); CUSA CC, LLC (1999); CUSA CSS, LLC (1244); CUSA EE, LLC (1982); CUSA ELKO, LLC (4648); CUSA ES, LLC (1941); CUSA FL, LLC (1920); CUSA GCBS, LLC (1891); CUSA GCT, LLC (1833); CUSA KBC, LLC (1808); CUSA K-TCS, LLC (1741); CUSA Leasing, LLC (1321); CUSA PCSTC, LLC (1701); CUSA PRTS, LLC (1591); CUSA RAZ, LLC (0640); CUSA Transit Services, LLC (8847); Get A Bus, LLC (1907); Coach BCCAE, L.P. (3488); Coach Leasing BCCAE, L.P. (6784). The Debtors' corporate offices are located at 8150 North Central Expressway, Suite M1000, Dallas, Texas 75206.

[2]     Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Motion.

of the First Day Declaration; and the Court having entered the Interim Order Pursuant to 11 U.S.C. §§ 105(a), 363, 364, 1107, and 1108 (I) Authorizing Payment of Prepetition Claims of Certain Critical Vendors and (II) Scheduling a Final Hearing [Docket No. 52] (the "**Interim Order**") on January 5, 2012; and it appearing that the Court has jurisdiction over this matter pursuant to 28 U.S.C. § 157(b)(2); and the Court having determined that granting the relief requested in the Motion is in the best interests of the Debtors, their estates and creditors; and notice of the Motion being sufficient under the circumstances; and after due deliberation and sufficient cause appearing therefor;

### IT IS HEREBY ORDERED THAT:

1.      The Motion is granted on a final basis as set forth herein.

2.      The Debtors in their discretion and in the reasonable exercise of their business judgment, to the extent permitted by the Debtors' proposed post-petition financing, are authorized, but not directed, to pay the prepetition claims of the Critical Vendors (the "**Critical Vendor Claims**") subject to the conditions set forth in this Critical Vendor Order, and subject to any applicable order governing the use of cash collateral or post-petition financing.

3.      The Debtors' payment of the Critical Vendor Claims shall not exceed $1.35 million in the aggregate (the "**Critical Vendor Cap**").[3]

4.      The payment of Critical Vendor Claims is conditioned on the agreement of the individual Critical Vendor to continue supplying goods and services to the Debtors on terms that are as favorable or more favorable to the Debtors as the most favorable trade terms, practices, and programs in effect between the Critical Vendor and the Debtors in the six months prior to the Petition Date (the "**Customary Trade Terms**"), or such other trade terms as are agreed to by the Debtors and the Critical Vendor.

5.      The Debtors may, in their discretion, negotiate new trade terms with any Critical Vendor as a condition to payment of any Critical Vendor Claim, including, without

---

[3]      The Debtors reserve the right to increase the Critical Vendor Cap upon entry of an Order on notice and a hearing, if necessary.

limitation that as a condition for Critical Vendor status the Critical Vendor agree to waive all or a portion of the prepetition claim not treated not afforded Critical Vendor Claim status.

6.      For those Critical Vendors who have agreed to provide goods and services to the Debtors on terms different from their Customary Trade Terms, the Debtors reserve the right to seek written acknowledgment of such terms on a case-by-case basis.  Nothing in this Order should be construed as a waiver by any of the Debtors of their rights to contest any invoice of a Critical Vendor under applicable non-bankruptcy law.

7.      If a Critical Vendor refuses to supply goods or services to the Debtors on Customary Trade Terms following payment of any portion of its Critical Vendor Claim, or fails to comply with any trade agreement it entered into with the Debtors, the Debtors may, in their discretion and without further order of the Court, (i) declare that any trade agreement between the Debtors and such Critical Vendor is terminated (if applicable), and (ii) declare that any payments made to such Critical Vendor on account of its Critical Vendor Claim, whether pursuant to a trade agreement or otherwise, is deemed to have been in payment of then-outstanding postpetition claims of such Critical Vendor.

8.      In the event the Debtors exercise the rights set forth in the preceding paragraph, the Debtors may also request that the Critical Vendor against which the Debtors exercised such rights be required to immediately return to the Debtors any payments made on account of its Critical Vendor Claim to the extent that such payments exceed the postpetition amounts then owed to such Critical Vendor, without giving effect to any rights of setoff or reclamation.

9.      The Debtors are authorized, but not required, in the exercise of their business judgment, to pay claims for Critical Vendors entitled to administrative priority under section 503(b)(9) of the Bankruptcy Code in the ordinary course of the Debtors' business and on such terms as the Debtors deem appropriate.  The Debtors shall maintain a matrix summarizing the name of each Critical Vendor paid on account of a Critical Vendor Claim, the amount paid to each Critical Vendor on account of its Critical Vendor Claim and a brief description of the goods or services provided by such Critical Vendor, and shall provide such matrix weekly to the

administrative agent under the Debtors' proposed debtor in possession financing (as well as reasonable and timely access to information sufficient to enable the administrative agent under the Debtors' proposed debtor in possession financing to monitor payments made, obligations satisfied and other actions taken pursuant to this Order).

10.    In exchange for a payment authorized under the Critical Vendor Order, a Critical Vendor shall waive and release all other claims against the Debtors including, without limitation, any claims arising under section 503(b)(9) of the Bankruptcy Code; provided, however, that the Debtors, in their discretion, may negotiate with any Critical Vendor regarding waiver of such Critical Vendor's claim.

11.    Nothing herein is, or shall be deemed to be, intended to operate as the assumption or rejection of any executory contract.

12.    Nothing herein is, or shall be deemed to be, a waiver by the Debtors of their rights to contest any invoice of a Critical Vendor under applicable non-bankruptcy law.

13.    Notwithstanding anything to the contrary in this Order, the Debtors shall follow the following procedures prior to the payment of any Critical Vendor:

(a)    The Debtors shall provide professionals retained by the Official Committee of Unsecured Creditors (the "**Creditors' Committee**"), subject to any confidentiality agreements (with a copy to counsel to the DIP Agent and the Prepetition First Lien Agent), with a list, which may be provided by electronic mail, of any Critical Vendors sought to be paid (the "**Critical Vendor List**"), which shall identify, without limitation, the following information: (i) the Debtor(s) against which the Critical Vendor is asserting a claim; (ii) the amount of the Critical Vendor Claim; (iii) the Critical Vendor; (iv) the basis for the Critical Vendor Claim, including the amount of such Critical Vendor Claim that is entitled to priority under section 503(b)(9) of the Bankruptcy Code and the amount that is a general unsecured claim; and (v) and any other information reasonably requested by the Creditors' Committee;

(b)    Counsel to the Creditors' Committee shall have through 5:00 p.m. prevailing Eastern Time on the third business day after receipt of the Critical Vendor List to review the Critical Vendor List (the "**List Review Period**") and notify the Debtors in writing, which may be by electronic mail, of any issues (the "**Issues**") with respect to the payment of any Critical Vendor;

(c)     If counsel to the Creditors' Committee does not notify the Debtors of any Issues by the expiration of the List Review Period, or if counsel to the Creditors' Committee consents to the proposed Critical Vendor Payments before expiration of the List Review Period, the Debtors shall be permitted to pay the respective Critical Vendors, subject to the terms of this Order;

(d)     If counsel to the Creditors' Committee timely notifies the Debtors of any Issue with respect to any Critical Vendor payment (a "**Questioned Payment**") prior to the expiration of the List Review Period, then the Debtors shall not pay such Questioned Payment without further order of this Court or consent of counsel to the Creditors' Committee; provided, however, that the Debtors may pay any other Critical Vendor claim on the Critical Vendor List other than any Questioned Payment, subject to the terms of this Order.

14.     To the extent that there is any inconsistency between the terms of the interim or final order approving the proposed debtor in possession financing, if and when entered, and this Order, the terms of the interim or final order approving the proposed debtor in possession financing, as applicable, shall govern.

15.     The Court shall retain jurisdiction with respect to all matters arising from or related to the implementation of this Order.

Dated: January **27**, 2012
        Wilmington, Delaware

HONORABLE KEVIN GROSS
UNITED STATES BANKRUPTCY JUDGE