**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>COACH AM GROUP HOLDINGS CORP, *et al.*,[1]<br><br><br><br>Debtors. | Chapter 11<br><br>Case No. 12-10010 (KG)<br>Jointly Administered<br><br>**Hearing Date:** May 8, 2013 at 3:00 pm<br>**Objection Deadline:** May 1, 2013 at 4:00 pm<br><br>**Re Docket Nos. 1483** |

**UNITED STATES TRUSTEE'S OBJECTION TO THE**
**MOTION OF THE DEBTORS PURSUANT FOR ENTRY OF AN**
**ORDER PURSUANT TO 11 U.S.C. §§ 105(a) AND 363(b) APPROVING AND**
**AWARDING AN INCENTIVE FEE TO ALVAREZ & MARSAL NORTH AMERICA,**
**LLC AND APPROVING THE AMENDED ENGAGEMENT LETTER**

Roberta A. DeAngelis, the United States Trustee for Region 3 ("U. S. Trustee"), by and through her undersigned attorney, hereby submits this objection (the "Objection") to the Motion of the Debtors for Entry of an Order Pursuant to 11 U.S.C. §§ 105 and 363(b) Approving and Awarding an Incentive Fee to Alvarez & Marsal North America, LLC and Approving the Amended Engagement Letter (Docket No. 1483) (the "Motion"). In support of the Objection, the U. S. Trustee respectfully states:

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number are: Coach Am Group Holdings Corp. (4830); Coach Am Holdings Corp. (1816); Coach America Holdings, Inc. (2841); American Coach Lines, Inc. (2470); America Charters, Ltd. (8246); American Coach Lines of Atlanta, Inc. (4003); American Coach Lines of Jacksonville, Inc. (1360); American Coach Lines of Miami, Inc. (7867); American Coach Lines of Orlando, Inc. (0985); Coach America Group, Inc. (2816); B & A Charter Tours, Inc. (9392); Dillon's Bus Service, Inc. (5559); Florida Cruise Connection, Inc. (9409); Hopkins Airport Limousine Services, Inc. (1333); Lakefront Lines, Inc. (5309); The McMahon Transportation Company (0030); Midnight Sun Tours, Inc. (2791); Royal Tours of America, Inc. (2313); Southern Coach Company (6927); Tippet Travel, Inc. (8787); Trykap Airport Services, Inc. (0732); Trykap Transportation Management, Inc. (2727); KBUS Holdings, LLC (6419); ACL Leasing, LLC (2058); CAPD, LLC (4454); Coach America Transportation Solutions, LLC (6909); CUSA, LLC (3523); CUSA ASL, LLC (2030); CUSA AT, LLC (2071); CUSA AWC, LLC (2084); CUSA BCCAE, LLC (2017); CUSA BESS, LLC (3610); CUSA CC, LLC (1999); CUSA CSS, LLC (1244); CUSA EE, LLC (1982); CUSA ELKO, LLC (4648); CUSA ES, LLC (1941); CUSA FL, LLC (1920); CUSA GCBS, LLC (1891); CUSA GCT, LLC (1833); CUSA KBC, LLC (1808); CUSA K-TCS, LLC (1741); CUSA Leasing, LLC (1321); CUSA PCSTC, LLC (1701); CUSA PRTS, LLC (1591); CUSA RAZ, LLC (0640); CUSA Transit Services, LLC (8847); Get A Bus, LLC (1907); Coach BCCAE, L.P. (3488); Coach Leasing BCCAE, L.P. (6784).

**Preliminary Statement**

1.      During the fifteen months these chapter 11 cases have been pending, A&M, the Debtors' restructuring advisors, has earned more than $7.3 million. Now the Debtors and A&M seek court approval of an additional $750,000 incentive fee. The Court should deny payment of the Incentive Fee because it is inconsistent with the terms of this Court's order, and the Jay Alix Protocol.

2.      At the outset of these cases, the Court entered an order regarding the terms of A&M's retention. That order reflected changes insisted upon by the U. S. Trustee, based on the Jay Alix Protocol. Specifically, the U. S. Trustee did not file an objection to A&M's retention based on the proposed order having been revised so as to *expressly preclude* the payment of an "incentive fee" if the cases were dismissed. At this late juncture, after the services have been provided and after parties in interest have relied on the A&M Retention Order, the Debtors now seek to amend the terms of retention, so as to re-create an obligation on the part of the estate to pay the "incentive fee" where the cases are dismissed. The A&M Retention Order previously entered by this Court precludes that payment, and the order should not be retroactively changed in such circumstances.

**Jurisdiction**

3.      This Court has jurisdiction to hear this objection pursuant to 28 U.S.C. § 1334.

4.      Pursuant to 28 U.S.C. § 586, the U. S. Trustee is charged with the administrative oversight of cases commenced pursuant to chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). This duty is part of the U.S. Trustee's overarching responsibility to enforce the bankruptcy laws as written by Congress and interpreted by the

courts. *See United States Trustee v. Columbia Gas Sys., Inc. (In re Columbia Gas Sys., Inc.)*, 33 F.3d 294, 295-96 (3d Cir. 1994) (noting that U. S. Trustee has "public interest standing" under 11 U.S.C. § 307, which goes beyond mere pecuniary interest); *Morgenstern v. Revco D.S., Inc. (In re Revco D.S., Inc.)*, 898 F.2d 498, 500 (6th Cir. 1990) (describing the U. S. Trustee as a "watchdog").

5. Pursuant to section 307 of the Bankruptcy Code, the U. S. Trustee has standing to be heard with regard to this Objection.

**Background**

6. On January 3, 2012 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of title 11 of the Bankruptcy Code.

7. The Debtors continue to operate their business and manage their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

8. On January 13, 2012, the U. S. Trustee appointed the official committee of unsecured creditors. *See* Docket No. 92.

9. On January 13, 2012, the Debtors filed the *Motion of the Debtors for an Order Pursuant to 11 U.S.C. §§ 105(a) and 363(b) Authorizing the Debtors, Nunc Pro Tunc to the Petition Date, to (I) Retain Alvarez & Marsal North America, LLC to Provide the Debtors a Chief Restructuring Officer and Certain Additional Personnel and (II) Designate Brian E. Cejka as Chief Restructuring Officer of the Debtors* (Docket No. 100) (the "A&M Retention Motion").

10. Pursuant to the A&M Retention Motion, the Debtors' requested that the Court: (i) authorize the retention of Alvarez & Marsal North America, LLC ("A&M") to provide the Debtors a chief restructuring officer and certain additional personnel, and (ii) designate Brian

E. Cejka as the CRO for the Debtors, *nunc pro tunc* to the Petition Date pursuant to the terms of the Engagement Letter.[2]

11. Pursuant to the terms of the Engagement Letter and the A&M Retention Order, A&M was retained to provide the following services:

(a) Perform a financial review of the Debtors, including but not limited to a review and assessment financial information, including without limitation the Debtors short and long-term projected cash flows, and operating performance;

(b) Assist in the identification (and implementation) of cost reduction and operational improvement opportunities;

(c) Assist the CEO and other professionals engaged by the Debtors in developing restructuring plans or strategic alternatives for maximizing the enterprise value of the Debtors' various business lines;

(d) Assist the Debtors and its legal counsel in the completion of the contingency planning process;

(e) Perform such other services in connection with the restructuring process as reasonably requested or directed by the Debtors' Board of Directors (the "Board") and other authorized company personnel as authorized by the Board, and agreed to by A&M that is not duplicative of work others are performing for the Debtors; and

(f) Evaluate the current liquidity position and expected future cash flows and, if appropriate, assist with implementation of cash forecasting, cash conservation matters, working capital management and reporting tools as requested (collectively, the "A&M Retention Objectives").

*A&M Retention Motion*, at ¶ 17; and *Engagement Letter*, at § 1.

12. The A&M Retention Motion sought to compensate A&M at a rate of $175,000 per month for Mr. Cejka and one additional A&M personnel. *A&M Retention Motion*, at ¶ 22; and *Engagement Letter*, at § 4. If the Debtors request that A&M supplement the engagement team with other additional A&M personnel, A&M would be permitted to bill for those services at an hourly billing rate based on the positions held by such additional personnel at A&M. *Id.*

---

[2] All capitalized terms not defined herein shall have the meaning ascribed to them in the Motion.

13.     The Engagement Letter also provided that in addition to the monthly and hourly compensation A&M would be entitled:

> to incentive compensation in the amount of $750,000 (the "Incentive Fee") payable upon the earlier of (x) the consummation of a Chapter 11 plan of reorganization; and (y) the sale, transfer, or other disposition of all or a substantial portion of the assets or equity of the Company in one or more transactions."

*Engagement Letter*, at § 4(d).

14.     Consistent with the Jay Alix Protocol (defined below) and notwithstanding the terms of the Engagement Letter, on January 27, 2012, the Court entered the *Order Authorizing the Debtors, Nunc Pro Tunc to the Petition Date, to (I) Retain Alvarez & Marsal North America, LLC to Provide the Debtors a Chief Restructuring Officer and Certain Additional Personnel and (II) Designate Brian E. Cejka as Chief Restructuring Officer for the Debtors* (Docket No. 159) (the "A&M Retention Order").

15.     The A&M Retention Order included the standard Jay Alix Protocol language, including the provision outlined in Paragraph 2(g) which provides:

> Success fees, transaction fees, catch up fees, incentive fees or other backend fees shall be approved by the Court at the conclusion of the case on a reasonableness standard and are not being pre-approved by entry of this Order. **No** success fee, transaction fee, **incentive fee** or back-end fee **shall be sought upon** conversion of the case, **dismissal of the case for cause** or appointment of a trustee.

*A&M Retention Order*, at ¶ 2(g) (emphasis added)

16.     As of February 28, 2013, which is the date of the last monthly statement filed by A&M in these cases, in accordance with the A&M Retention Order, A&M has been paid by the Debtors more than $7.3 million in compensation and expenses. *See* Docket Nos. 282, 792 – 793, 1049 – 1052, 1107, 1167, 1260, 1334, 1419 – 1420, and 1467.

5

17. On April 17, 2013, the Debtors filed the Motion. On the same date, the *Debtors filed a Motion for Entry of an Order, Pursuant to Sections 105(a), 349 and 1112(b) of the Bankruptcy Code (A) Approving a General Unsecured Creditor Trust Agreement and Lender Trust Agreement, (B) Authorizing the Transfer of Assets to the Lender Trustee, (C) Dismissing the Debtors' Chapter 11 Cases and (D) Granting Related Relief* (Docket No. 1482) (the "Structured Dismissal Motion"). Pursuant to the terms of the Structured Dismissal Motion the Debtors are seeking, among other things, the dismissal of their cases.

**Objection**

18. As part of their "second day" pleadings, the Debtors' sought the Court's authority to retain A&M as its chief restructuring officer ("CRO"). *See* Docket No. 100. The A&M Retention Application and proposed A&M Retention Order for the most part complied with the crisis management protocol (hereinafter, the "Jay Alix Protocol") developed in this District and approved by this Court as settlements in the *In re Harnischfeger Indus.*, Case No. 99-2171 (PJW) (Bankr. D. Del. 1999); *In re Safety-Kleen Corp.*, Case No. 00-2303 (PJW) (Bankr. D. Del. 2000).

19. The Jay Alix Protocol is the name given to the settlement agreement between the U. S. Trustee and Jay Alix & Associates. Although the Jay Alix Protocol is an agreement between the U. S. Trustee and Jay Alix, the Trustee has extended the benefit of the Jay Alix Protocol to professionals who seek to be retained as a crisis management advisor in bankruptcy cases filed in this District and elsewhere. So long as a professional agrees to comply with the terms of the Jay Alix Protocol, in most instances this agreement resolves U. S. Trustee's objection to the crisis management advisor's retention application. If a professional does not comply with the terms of the protocol, then the U. S. Trustee will generally oppose retention as

contrary to section 327 of the Bankruptcy Code. The U. S. Trustee does not re-negotiate the terms of the Jay Alix Protocol as each bankruptcy case is filed.

20. The U. S. Trustee did not oppose A&M's retention because A&M made some additional disclosures and incorporated the U. S. Trustee's comments into the A&M Retention Order, which included adding the term "incentive fee" to the paragraph 2(g) of the A&M Retention Order. *See A&M Retention Order*, at ¶ 2(g). The U. S. Trustee requested that the term "incentive fee" be included in paragraph 2(g) of the A&M Order to ensure that the Debtors and A&M were clear that the preclusive language of paragraph 2(g) included the Incentive Fee referenced in section 4(d) of the Engagement Letter, and to ensure compliance with the Jay Alix Protocol. *See A&M Retention* Order, ¶ 2(g); *Jay Alix Protocol, § II.D*, attached hereto as Exhibit A. Based on the parties' resolution of the U. S. Trustee's comments, the additional disclosure by A&M via a supplemental declaration, and the terms of the revised A&M Retention Order, the U. S. Trustee did not oppose the Debtors' retention of A&M.

21. It is clear from the revisions to the proposed order that the Debtors and A&M were aware of the Jay Alix Protocol, and were going to be bound by its terms.[3] The Court approved the A&M Retention Order with those terms. It is also clear that once the Debtors decided to seek dismissal of their cases, the relief being sought in the Motion in connection with the Incentive Fee is prohibited by this Court's earlier order. Notwithstanding, the Debtors are requesting that the Court alter the terms of their retention and the Jay Alix Protocol to award A&M the Incentive Fee. The relief that the Debtors are seeking is contrary to this Court's order and inconsistent with the positions taken earlier in the cases. In addition, neither the Debtors nor

---

[3] A&M has generally complied with the Jay Alix Protocol in the past. *See*, *e.g.*, *In re Harry & David Holdings, Inc.*, Case No. 11-10844 (MFW) (Bankr. D. Del. April 27, 2011); *In re Filene's Basement, LLC*, Case No. 11-13511 (KJC) (Bankr. D. Del. Jan. 24, 2012); *In re Vertis Holdings, Inc.*, Case No. 12-12821 (CSS) (Bankr. D. Del. Nov. 20, 2012).

A&M have stated a legal basis for deviating from the A&M Retention Order to which they agreed to be bound, and which this Court approved.

22. Notwithstanding this Court's order, the Jay Alix Protocol, the Debtors' and A&M's agreement regarding the same, and the proposed dismissal of theses cases, the Debtors' assert in the Motion that A&M is entitled to the Incentive Fee because of their efforts in these cases related the sale process, strategic planning and implementation process, and efforts in connection of the Debtors' Lenders. *See* Motion, at ¶¶ 38-63. However, what the Debtors fail to include is that A&M's efforts were consistent with the A&M Retention Objectives, which A&M was engaged and obligated to provide. *See* supra ¶ 11. The A&M Retention Objectives outline the duties and responsibilities that A&M were tasked with once retained in these cases. Specifically, the A&M Retention Objectives require A&M to: (a) perform a financial review of the Debtors, which likely includes an analysis of the Debtors' pre-petition debt with Debtors' Lenders and any proposed post-petition debt to be incurred; (b) assist in the identification (and implementation) of cost reduction and operational improvement opportunities, which likely includes evaluating the Debtors' strategic alternatives and possible sale of the Debtors' assets; (c) assist the CEO and other professionals engaged by the Debtors in developing restructuring plans or strategic alternatives for maximizing the enterprise value of the Debtors' various business lines, which likely includes a sale of the Debtors' assets and/or possible financing; (d) perform such other services in connection with the restructuring process as reasonably requested or directed by the Debtors' Board of Directors, which seems to be a catch-all to ensuring a successful restructuring process.

23. A&M has been handsomely compensated over $7.3 million (and counting) in fees and expenses in connection with A&M's performance of the A&M Retention Objectives.

The Incentive Fee is a bonus for which A&M is not eligible to seek or receive because these cases are being dismissed. The fact that the Incentive Fee would not be payable if the Debtors' cases were dismissed is not a surprise to neither the Debtors nor A&M, the parties agreed to that retention condition.

## **Conclusion**

24. Under the terms of the Jay Alix Protocol – the only vehicle for retention and employment of A&M in these cases because Mr. Cejka was serving as the Debtors' CRO before the petition date and A&M is not disinterested – incentive fees, success fees and other back-end fees are not to be sought or paid upon dismissal of a case. Because these cases are being dismissed, A&M is not entitled to seek – or be awarded – the Incentive Fee.

25. Seeking – or allowing – the payment of the Incentive Fee is a dismissed case would dishonor the Jay Alix Protocol. The Jay Alix Protocol is effective only when restructuring professionals and the courts can be relied upon to honor the letter and spirit of the entire protocol.

26. Based on the foregoing, the U. S. Trustee objects to the relief in the Motion related to the Incentive Fee.

[REMAINDER OF THIS PAGE INTENTIONALLY LEFT BLANK.]

**WHEREFORE,** the U.S. Trustee requests that this Court sustains this Objection, and/or grant such other relief as this Court deems appropriate, fair and just.

Dated: May 1, 2013
      Wilmington, Delaware

Respectfully submitted,

**ROBERTA A. DeANGELIS**
**UNITED STATES TRUSTEE**

By:    */s/ Tiiara N. A. Patton*    .
      Tiiara N. A. Patton
      Trial Attorney
      United States Department of Justice
      Office of the United States Trustee
      J. Caleb Boggs Federal Building
      844 King Street, Suite 2207, Lockbox 35
      Wilmington, DE 19801
      (302) 573-6491
      (302) 573-6497 (Fax)