**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>COACH AM GROUP HOLDINGS CORP, *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 12-10010 (KG)<br>Jointly Administered<br><br>**Hearing Date:** May 8, 2013 at 3:00 pm<br>**Objection Deadline:** May 1, 2013<br><br>**Re Docket Nos. 1482** |

**UNITED STATES TRUSTEE'S OBJECTION TO
THE MOTION OF THE DEBTORS FOR ENTRY OF AN
ORDER PURSUANT TO 11 U.S.C. §§ 105(a), 349 AND 1112(b) AND
FED. R. BANKR. P. 1017(a) (A) APPROVING THE TRUST AGREEMENTS,
(B) AUTHORIZING THE TRANSFER OF REMAINING ASSETS TO THE LENDER
TRUSTEE, (C) DISMISSING THE DEBTORS' CHAPTER 11 CASES
AND (D) GRANTING RELATED RELIEF**

Roberta A. DeAngelis, the United States Trustee for Region 3 ("U. S. Trustee"), by and through her undersigned attorney, hereby submits this objection (the "Objection") to the Motion of the Debtors for Entry of an Order Pursuant to 11 U.S.C. §§ 105(a), 349 and 1112(b) and Fed. R. Bankr. P. 1017(a) (A) Approving the Trust Agreements, (B) Authorizing the Transfer of Remaining Assets to the Lender Trustee, (C) Dismissing the Debtors' Chapter 11

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number are: Coach Am Group Holdings Corp. (4830); Coach Am Holdings Corp. (1816); Coach America Holdings, Inc. (2841); American Coach Lines, Inc. (2470); America Charters, Ltd. (8246); American Coach Lines of Atlanta, Inc. (4003); American Coach Lines of Jacksonville, Inc. (1360); American Coach Lines of Miami, Inc. (7867); American Coach Lines of Orlando, Inc. (0985); Coach America Group, Inc. (2816); B & A Charter Tours, Inc. (9392); Dillon's Bus Service, Inc. (5559); Florida Cruise Connection, Inc. (9409); Hopkins Airport Limousine Services, Inc. (1333); Lakefront Lines, Inc. (5309); The McMahon Transportation Company (0030); Midnight Sun Tours, Inc. (2791); Royal Tours of America, Inc. (2313); Southern Coach Company (6927); Tippet Travel, Inc. (8787); Trykap Airport Services, Inc. (0732); Trykap Transportation Management, Inc. (2727); KBUS Holdings, LLC (6419); ACL Leasing, LLC (2058); CAPD, LLC (4454); Coach America Transportation Solutions, LLC (6909); CUSA, LLC (3523); CUSA ASL, LLC (2030); CUSA AT, LLC (2071); CUSA AWC, LLC (2084); CUSA BCCAE, LLC (2017); CUSA BESS, LLC (3610); CUSA CC, LLC (1999); CUSA CSS, LLC (1244); CUSA EE, LLC (1982); CUSA ELKO, LLC (4648); CUSA ES, LLC (1941); CUSA FL, LLC (1920); CUSA GCBS, LLC (1891); CUSA GCT, LLC (1833); CUSA KBC, LLC (1808); CUSA K-TCS, LLC (1741); CUSA Leasing, LLC (1321); CUSA PCSTC, LLC (1701); CUSA PRTS, LLC (1591); CUSA RAZ, LLC (0640); CUSA Transit Services, LLC (8847); Get A Bus, LLC (1907); Coach BCCAE, L.P. (3488); Coach Leasing BCCAE, L.P. (6784).

Cass and (D) Granting Related Relief (Docket No. 1482) (the "Motion"). In support of the Objection, the U. S. Trustee respectfully states:

**Preliminary Statement**

1. In these jointly administered Chapter 11 cases, the debtors-in-possession ("Debtors") seek dismissal of the cases in a manner not contemplated by the Bankruptcy Code and indeed runs contrary to several provisions of the Bankruptcy Code. The Motion asks this Court to approve a procedure that essentially constitutes a *de facto* plan that ignores important safeguards Congress built into the Chapter 11 plan confirmation process. Because the proposed "structured dismissal" seeks to circumvent these protections, it should be rejected.

2. Examples of problematic plan provisions include the following. The Motion seeks extensive release and exculpatory relief for the Prepetition First Lien Agent, the Prepetition First Lien Lenders, the Lender Trustee and the Lender Trust, the Creditors Committee, the Debtors, and their and the respective present or former officers, directors, employees, members, attorneys, consultants, advisors and agents of the Prepetition First Lien Agent, the Prepetition First Lien Lenders, the Lender Trustee, the Lender Trust and the Creditors' Committee. The Debtors cite to no legal authority in support of the releases or exculpation as part of a dismissal that is without discharge, without resolution of the claims held by or against the Debtors' estates, and without a disinterested examination of whether the directors, officers or others to be exculpated might have committed acts for which claims against them ought to be pursued. The Debtors provide no support for the releases or exculpation they seek outside of a chapter 11 plan of reorganization. As the Debtors are pursuing dismissal rather than reorganization, that portion of the Debtors' Motion that seeks exculpatory relief should be denied.

3. The Motion also seeks post-dismissal retention of jurisdiction to resolve claims objections and to address professional fees. The Motion further seeks approval of the Lender's Trust Agreement. All of the Debtors' requests for relief should be addressed through a chapter 11 plan process as set forth in the Bankruptcy Code.

## Jurisdiction

4. This Court has jurisdiction to hear this objection pursuant to 28 U.S.C. § 1334.

5. Pursuant to 28 U.S.C. § 586, the U. S. Trustee is charged with the administrative oversight of cases commenced pursuant to chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). This duty is part of the U.S. Trustee's overarching responsibility to enforce the bankruptcy laws as written by Congress and interpreted by the courts. *See United States Trustee v. Columbia Gas Sys., Inc. (In re Columbia Gas Sys., Inc.),* 33 F.3d 294, 295-96 (3d Cir. 1994) (noting that U. S. Trustee has "public interest standing" under 11 U.S.C. § 307, which goes beyond mere pecuniary interest); *Morgenstern v. Revco D.S., Inc. (In re Revco D.S., Inc.)*, 898 F.2d 498, 500 (6th Cir. 1990) (describing the U. S. Trustee as a "watchdog").

6. Pursuant to section 307 of the Bankruptcy Code, the U. S. Trustee has standing to be heard with regard to this Objection.

## Background

7. On January 3, 2012 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of title 11 of the Bankruptcy Code.

8. The Debtors continue to operate their business and manage their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

3

9. On January 13, 2012, the U. S. Trustee appointed the official committee of unsecured creditors (the "Creditors' Committee"). *See* Docket No. 92.

10. On March 19, 2012, the Court entered the *Final Order (I) Authorizing Debtors (A) to Obtain Post-Petition Financing Pursuant to 11 U.S.C. §§ 105, 361, 362, 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1) and 364(e) and (B) to Utilize Cash Collateral Pursuant to 11 U.S.C. § 363, (II) Granting Adequate Protection to Pre-Petition Secured Parties Pursuant to 11 U.S.C. §§ 361, 362, 363, and 364 and (III) Granting Related Relief* (Docket No. 444) (the "Final DIP Order"). The Final DIP Order included the Debtors, the DIP Lenders,[2] the Prepetition First Lien Lenders, and the Creditors' Committee resolution of the Creditors' Committee objection to the Final DIP Order. Specifically, the Final DIP Order authorized, among other things, the formation of a trust for the benefit of the Debtors' general unsecured creditors (the "GUC Trust").

11. On January 23, 2012, the Court entered the *Order Pursuant to 11 U.S.C. §§ 105(a), 363 and 365 and Fed. R. Bankr. P. 2002, 6004, 6006 and 9014 Approving (I) Bidding Procedures, (II) Form and Manner of Sale Notices, and (III) Sale Hearing Date* (Docket No. 161) (the "Bidding Procedures Order"). The Bidding Procedures Order, among other things, directed the U. S. Trustee to appoint a consumer privacy ombudsman (the "Ombudsman"). On April 16, 2012, the U. S. Trustee appointed Lucy L. Thompson to serve as the Ombudsman in connection with the Debtors' proposed sale process. *See* Docket No. 591.

12. Pursuant to the Bidding Procedures Order and other subsequent sale related orders entered by the Court, the Debtors have sold substantially all of its assets. *See* Docket No. 448, 758 – 762, 1113, 1147, and 1432.

---

[2] All capitalized terms not defined herein shall have the meaning ascribed to them in the Motion.

4

13. The Debtors have not filed any plan or disclosure statement in these cases. The Debtors' general unsecured creditors will receive the recovery set-aside in the GUC Trust. It is unknown whether all administrative fees (including those that are not professional fees) and priority claims in the cases will be paid.

14. On April 17, 2013, the Debtors filed the Motion, seeking a "structured dismissal" of its cases. To effectuate this "structured dismissal," the Debtors asks this Court to (i) approve the GUC Trust Agreement, and authorize the Debtors to transfer the remaining funds to the GUC Trust; (ii) approve the Lender's Trust Agreement, and authorize the Debtors to transfer the remaining assets to the Lender's Trust for the benefit of the Lenders; (iii) retain jurisdiction to hear claims objections and final fee applications.

15. The Motion also seeks the approval of release provisions, which includes non-consensual third-party releases, the Prepetition First Lien Agent, the Prepetition First Lien Lenders, the Lender Trustee and the Lender Trust, the Creditors Committee, the Debtors, and their respective present or former officers, directors, employees, members, attorneys, consultants, advisors and agents of the Prepetition First Lien Agent, the Prepetition First Lien Lenders, the Lender Trustee, the Lender Trust and the Creditors' Committee (the "Released Parties"). *See Proposed Order*, ¶¶ 14 – 15. Specifically, the paragraphs 14 and 15 of the proposed order provide the following:

> 14. From and after the date of this Order, the Prepetition First Lien Agent, the Prepetition First Lien Lenders, the Lender Trustee and the Lender Trust shall not be liable for any funding of, or the making of any payments related to, or obligations of the Debtors' estates, including, without limitation, payment of any claims of any creditors of the Debtors (including, without limitation, any further funding of the Wind-Down Carve Out Account), none of which shall be chargeable to, or be the responsibility of, the Prepetition First Lien Agent or the Prepetition First Lien Lenders.

15. From and after the date of this Order, the Debtors, the Prepetition First Lien Agent, the Prepetition First Lien Lenders, the Lender Trustee, the Lender Trust and the Creditors' Committee, and the respective present or former officers, directors, employees, members, attorneys, consultants, advisors and agents of the Prepetition First Lien Agent, the Prepetition First Lien Lenders, the Lender Trustee, the Lender Trust and the Lenders' Committee, are hereby released from any and all claims of whatever kind or nature of the Debtors, the Creditors' Committee, creditors of the Debtors' estates and any other party in interest in these Chapter 11 cases, such that, except as otherwise provided herein, all creditors and other parties are barred from pursuing any remedies that they have with respect to claims against any Debtor, or against any third party as such claims relate to any Debtor.

*Id*.

16. The Motion further seeks to approval of an exculpation provision, which exculpates the Released Parties for:

"any act taken or omitted to be taken in connection with or related to the formation, preparation, dissemination, implementation, confirmation or consummation of the Motion or this Order (other than in contravention of the Motion or implementation of this Order), or any contract, instrument, release or agreement or document created or entered into, or any other act taken or omitted to be taken in connection with the Motion or this Order."

*Proposed Order*, ¶ 16.

## Objection

*The Proposed Structure*
*Dismissal is not an Appropriate*
*Use of Section 105(a)*

17. The Debtors base their Motion on sections 105(a), 349, and 1112(b) of the Bankruptcy Code. As section 1112(b) mentions only dismissal and not "structured dismissal," and as the additional relief sought by the Debtors in the Motion exceed what section 349 contemplates as the effect of a section 1112(b) dismissal, it is clear that the Debtors are actually asking this Court to use section 105(a) to graft a "structured dismissal" option onto the Bankruptcy Code that Congress did not choose to include.

6

18. Under section 105(a), "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title [i.e., the Bankruptcy Code]." The words "'provisions of this title' simply denote a set of remedies fixed by Congress. A court cannot legislate to add to them." *See Pertuso v. Ford Motor Credit Co.*, 233 F.3d 417, 423 (6th Cir. 2000).

19. Congress in the Bankruptcy Code provided for three, and only three, ways to exit chapter 11: (i) by confirming a plan of reorganization or liquidation under section 1129; (ii) by converting to another chapter of the Code under section 1112(b); and (iii) by dismissing the case under section 1112(b), without any of the *a la carte* add-ons sought by the Debtors.

20. As proposed by the Debtors in these cases, the "structured dismissal" proposed by the Debtors is actually a part-confirmation, part-conversion, part-dismissal hybrid that was not put into the Bankruptcy Code by Congress. Section 105(a) cannot be used to create such a statutory "work-around" – because Congress has enacted three specific ways to exit chapter 11, no court can legislate from the bench to create a fourth way. *See In re Combustion Engineering, Inc.*, 391 F.3d 190, 286 (3d Cir. 2004) (equitable power afforded by section 105(a) "cannot trump specific provisions of the Bankruptcy Code," "must be exercised within the parameters of the Code itself," and "is cabined by the Code"); *In re Kmart Corp.*, 359 F.3d 866, 871 (7th Cir. 2004) ("the power conferred by § 105(a) is one to implement rather than override"); *Resorts Int'l v. Lowenschuss (In re Lowenschuss)*, 67 F.3d 1394, 1402 (9th Cir. 1995) ("Section 105 does not authorize relief inconsistent with more specific law."); *In re Fesco Plastics Corp.*, 996 F.2d 152, 154 (7th Cir. 1993) ("[W]hen a specific Code section addresses an issue, a court may not employ its equitable powers to achieve a result not contemplated by the Code.") (citing *In re Morristown & Erie R.R. Co.*, 885 F.2d 98, 100 (3d Cir. 1989)).

21.     The relief sought by the Debtors does not effectuate the Bankruptcy Code, rather it exceeds the bounds of relief authorized 11 U.S. C. 105(a).

22.     Courts carefully limit the circumstances in which section 105(a) can be used; "Otherwise, there is a real risk that more particular restrictions found throughout the Code would amount to nothing, because the court could always use the residual equitable authority of § 105(a)." *See Disch v. Rasmussen*, 417 F.3d 769, 777 (7th Cir. 2005).  Thus, if section 105(a) could be used to get around any problems observed with sections 1112(b) and 1129 in certain situations, then such statutes "might as well not exist." *Id*. at 778 (analyzing section 105(a) in light of section 727(a) and Fed. R. Bankr. P. 4004).

23.     In light of the foregoing, the Debtors' proposed "structured dismissal" should be denied because it would require this Court to erroneously apply section 105(a).

*The Proposed Release and Exculpation*
*Provisions are Not Appropriate*
*Outside the Context of a Confirmed Plan*

24.     The Motion also seeks exculpatory and release relief on behalf of the Released Parties without the consent or agreement of affected persons and outside the context of a chapter 11 plan, which is the only mechanism to approve such provisions.  *See* 11 U.S.C.§ 1125(e) (describing protections afforded to certain persons acting in connection with the solicitation of a plan, or offer of securities sold under a plan); 11 U.S.C. § 1141 (describing the effect of confirmation on claims and liabilities).  The exculpation and release clauses sought by the Debtors would insulate them, the Prepetition First Lien Agent, the Prepetition First Lien Lenders, the Lender Trustee and the Lender Trust, the Creditors Committee, and their directors and officers, shareholders, professionals and other parties from liability without satisfying the appropriate standard for such relief under the Bankruptcy Code.

25. In *In re PWS Holding Corp.*, 228 F.3d 224, 246-47 (3d Cir. 2000), the United States Court of Appeals for the Third Circuit held that the plan's exculpation clause correctly stated the standard of liability for members of the official committee of unsecured creditors and its professionals. However, unlike here, the exculpation provisions in *PWS* were being sought in the context of the confirmation of the Plan.

26. The Bankruptcy Court in *In re Zenith Electronics*, 241 B.R. 92, 111 (Bankr. D. Del. 1999), adopted a five part test enunciated in *Master Mortgage Inv. Fund, Inc.*, 168 B.R. 930 (Bankr. W.D. Mo. 1994), to determine whether a release by a debtor of a third party as a part of a plan of reorganization is permissible. These factors are:

> ...(1) an identity of interest between the debtor and the third party...; (2) substantial contribution by the non-debtor of assets to the reorganization; (3) the essential nature of the injunction to the reorganization to the extent that, without the injunction, there is little likelihood of success; (4) an agreement by a substantial majority of creditors to support the injunction, specifically if the impacted class or classes 'overwhelmingly' votes to accept the plan; and (5) provision in the plan for payment of all or substantially all of the claims of the class or classes affected by the injunction.

*Id.* at 937.

27. In a plan context some Courts in this District have determined that third-party releases of non-debtors should be allowed only if they are consensual. *See In re Washington Mutual, Inc.*, 442 B.R. 314, 352 (Bankr. D. Del. 2011), *citing, inter alia, In re Coram Healthcare Corp.,* 315 B.R. 321, 335 (Bankr. D. Del. 2004) (holding that the "Trustee (and the Court) do not have the power to grant a release of the Noteholders on behalf of third parties," and that such release must be based on consent of the releasing party); *In re Zenith Electronics Corp.*, 241 B.R. 92, 111 (Bankr. D. Del. 1999) (release provision had to be modified to permit third parties' release of non-debtors only for those creditors who voted in favor of the plan); *In re Exide Technologies*, 303 B.R. 48, 74 (Bankr. D. Del. 2003) (approving releases

which were binding only on those creditors and equity holders who accepted the terms of the plan). The non-consensual third-party releases that are being sought in connection with the Debtors' "structured dismissal" in these cases are being sought outside of a plan and are contrary to the Bankruptcy Code and the law in this District.

28. The Debtors cite to no statutory or case law to support their request for exculpatory and releases relief as part of their dismissal, and do not make any argument as to why such relief should be granted outside of a confirmed plan. However, in the title of the motion and the jurisdiction section (¶ 2 of the Motion), the Debtors reference section 105(a) of the Bankruptcy Code. Section 105(a) of the Bankruptcy Code provides that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). That section of the Bankruptcy Code does not provide a basis for the relief the Debtors seek. Providing exculpation and releases to the Released Parties is not necessary or appropriate to carry out the provisions of title 11 when the cases are being dismissed without a discharge and without resolution of claims held by or against the Debtors' estates, and without a disinterested examination of whether the directors, officers or others to be released and exculpated might have committed acts for which claims against them ought to be pursued.

29. In addition, as stated supra, the equitable principles of section 105(a) of the Bankruptcy Code cannot be used to circumvent clear Congressional intent. *See, e.g., United States Trustee v. Columbia Gas Sys. Inc. (In re Columbia Gas Sys. Inc.)*, 33 F.3d 294, 300 (3d Cir. 1994); *United States Trustee v. Price Waterhouse*, 19 F.3d 138, 142 (3d Cir. 1994). Section 105(a) can only be used to carry out provisions of the Bankruptcy Code, not to graft new provisions onto the statute that Congress neither enacted nor intended. *See Southern Ry. Co. v.*

*Johnson Bronze Co.*, 758 F.2d 137, 141 (3d Cir. 1985) ("[S]ection 105(a) does not authorize the bankruptcy court to create rights not otherwise available under applicable law.").

30. Whereas some bankruptcy courts occasionally cast aside statutory remedies in favor of equitable remedies that lie outside of the language of the Bankruptcy Code, the Supreme Court has opined that "whatever equitable powers remain in the bankruptcy courts must and can only be exercised within the confines of the Bankruptcy Code." *Norwest Bank Worthington v. Ahlers*, 485 U.S. 197, 206 (1988). "The general grant of equitable power contained in § 105(a) cannot trump specific provisions of the Bankruptcy Code, and must be exercised within the parameters of the Code itself." *In re Combustion Engineering, Inc.*, 391 F.3d 190, 237 (3rd Cir. 2004).

31. To the extent the Debtors rely on section 105(a) for the requested release and exculpatory relief, they are seeking to use 105(a) to trump the requirements of a specific provision of the Bankruptcy Code, namely section 1125(e), which provides certain exculpatory protection to the Debtors and others, but only in connection with the solicitation of a plan, or offer of securities sold under a plan. *See* 11 U.S.C. § 1125(e). The Debtors seeks exculpatory protections that are broader than those provided by section 1125(e), even though no plan is being solicited. Section 105(a) cannot be used to provide parties with protection offered by another section of the Code without meeting the requirements of that other section. That is exactly what the Debtors seek to do here.

32. For these reasons, the Motion should be denied to the extent it seeks the release or exculpation of any party.

*Post-Dismissal Retention*
*of Jurisdiction Is Improper*

33. The Debtors request that the Court retain jurisdiction with respect to any matters, claims, rights, or disputes arising from or relating to the implementation of the proposed order, to adjudicate final fee application, and to adjudicate any objections to claims filed on behalf of the GUC Trustee. However, the Debtors do not cite any legal support for this relief. The Debtors are requesting the Court to divest them of their responsibilities and duties under the Bankruptcy Code by dismissing their Cases. At the same time that the Debtors are requesting this divestment, they are requesting that the Court retain jurisdiction the matters that they have deemed important (e.g., claim resolution and payment of professional fees).

34. A dismissal order that contains a jurisdiction retention provision cannot expand the post-dismissal jurisdiction of a bankruptcy court. *See Binder v. Price Waterhouse & Co., LLP (In re Resorts Int'l, Inc.)*, 372 F.3d 154, 161 (3d Cir. 2004). ("[I]f a court lacks jurisdiction over a dispute, it cannot create that jurisdiction by simply stating it has jurisdiction in a confirmation or other order."). The Debtors do not cite any statutory support as to support their request for this Court to retain jurisdiction over bankruptcy related matters once the cases are dismissed.

35. The Debtors' proposal should be denied because it is similar to a post-confirmation claim resolution process, except that no plan has been filed, and no plan solicitation process has occurred. Rather this is a worst case scenario because it is an ad-hoc attempt to address numerous issues that should be addressed in a chapter 11 plan, and an opportunity for parties in interest to be notices and heard.

36. The Debtors have informed counsel for the U. S. Trustee of their intention to leave the lead case open post-dismissal, which is Coach AM Group Holdings Corp, Case No.

12-10010(KG). However, it is not at all clear that the claims that will be the subject of the proposed claim resolution process are claims against only the lead debtor. If there are claims against the remaining debtors, then those cases should remain open. The Debtors' cases should not be dismissed and closed until all issues have been resolved.

*Approval of the Lender's Trust Agreement*

37. The Debtors are seeking approval of the Lender's Trust Agreement. However, it is not clear why the Court's approval is necessary, and what legal authority supports the Debtors' request.

38. The U. S. Trustee leaves the Debtors to their burden and reserves any and all rights, remedies and obligations to, *inter alia*, complement, supplement, augment, alter and/or modify this Objection.

*Consumer Privacy Ombudsman*

39. The Ombudsman has informed counsel for the U. S. Trustee that she has not received the final report regarding the opt-out process related to treatment of personally identifiable information that was implemented in connection with the Coach USA Sale. The Ombudsman further informed counsel for the U. S. Trustee that the opt-out information is necessary to complete her final report to the Court.

*Monthly Operating Reports and*
*Payment of Fees Pursuant to*
*28 U.S.C. § 1930*

40. The U. S. Trustee requests that the Court direct the Debtors to file monthly operating reports, and pay quarterly fees pursuant to 28 U.S.C. § 1930 in advance of the entry of any order dismissing these cases.

**Conclusion**

41. Based on the foregoing, the U. S. Trustee objects to the relief in the Motion.

42. The U. S. Trustee leaves the Debtors to their burden and reserves any and all rights, remedies and obligations to, *inter alia*, complement, supplement, augment, alter and/or modify this Objection, file an appropriate Motion and/or conduct any and all discovery as may be deemed necessary or as may be required and to assert such other grounds as may become apparent upon further factual discovery.

**WHEREFORE,** the U.S. Trustee requests that this Court sustains this Objection, and/or grant such other relief as this Court deems appropriate, fair and just.

Dated: May 2, 2013　　　　　　　　　　　　Respectfully submitted,
　　　　　Wilmington, Delaware

　　　　　　　　　　　　　　　　　　　　　**ROBERTA A. DeANGELIS**
　　　　　　　　　　　　　　　　　　　　　**UNITED STATES TRUSTEE**

　　　　　　　　　　　　　　　　　　　　　By:　*/s/ Tiiara N. A. Patton*　　　　　.
　　　　　　　　　　　　　　　　　　　　　　　　Tiiara N. A. Patton
　　　　　　　　　　　　　　　　　　　　　　　　Trial Attorney
　　　　　　　　　　　　　　　　　　　　　　　　United States Department of Justice
　　　　　　　　　　　　　　　　　　　　　　　　Office of the United States Trustee
　　　　　　　　　　　　　　　　　　　　　　　　J. Caleb Boggs Federal Building
　　　　　　　　　　　　　　　　　　　　　　　　844 King Street, Suite 2207, Lockbox 35
　　　　　　　　　　　　　　　　　　　　　　　　Wilmington, DE 19801
　　　　　　　　　　　　　　　　　　　　　　　　(302) 573-6491
　　　　　　　　　　　　　　　　　　　　　　　　(302) 573-6497 (Fax)