**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>COACH AM GROUP HOLDINGS CORP., _et al._[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 12-10010 (KG)<br><br>(Jointly Administered)<br><br>**Re: Docket Nos. 1482 and 1483** |

**DEBTORS' OMNIBUS REPLY TO (I) RESPONSES TO THE MOTION OF THE DEBTORS FOR ENTRY OF AN ORDER PURSUANT TO 11 U.S.C. §§ 105(a), 349 AND 1112(b) AND FED. R. BANKR. P. 1017(a) (A) APPROVING THE TRUST AGREEMENTS, (B) AUTHORIZING THE TRANSFER OF REMAINING ASSETS TO THE LENDER TRUSTEE, (C) DISMISSING THE DEBTORS' CHAPTER 11 CASES AND (D) GRANTING RELATED RELIEF AND (II) UNITED STATES TRUSTEE'S OBJECTION TO THE MOTION OF THE DEBTORS FOR ENTRY OF AN ORDER PURSUANT TO 11 U.S.C. §§ 105(a) AND 363(b) APPROVING AND AWARDING AN INCENTIVE FEE TO ALVAREZ & MARSAL NORTH AMERICA, LLC AND APPROVING THE AMENDED ENGAGEMENT LETTER**

The above-captioned debtors and debtors in possession (collectively, the "Debtors"), by and through their counsel, submit this omnibus reply (the "Reply") to (i) responses to the _Motion of the Debtors for Entry of an Order Pursuant to 11 U.S.C. §§ 105(a), 349 and 1112(b) and Fed. R. Bankr. P. 1017(a) (A) Approving the Trust Agreements, (B) Authorizing the Transfer of Remaining Assets to the Lender Trustee, (C) Dismissing the Debtors'_

---

[1] Coach Am Group Holdings Corp. (4830); Coach Am Holdings Corp. (1816); Coach America Holdings, Inc. (2841); American Coach Lines, Inc. (2470); America Charters, Ltd. (8246); CUSA Atlanta, Inc. (4003); American Coach Lines of Jacksonville, Inc. (0136); American Coach Lines of Miami, Inc. (7867); American Coach Lines of Orlando, Inc. (0985); Coach America Group, Inc. (2816); B & A Charter Tours, Inc. (9392); CUSA Dillon's, Inc. (5559); Florida Cruise Connection, Inc. (9409); Hopkins Airport Limousine Services, Inc. (1333); CUSA LL, Inc. (5309); The McMahon Transportation Company (0030); Midnight Sun Tours, Inc. (2791); Royal Tours of America, Inc. (2313); Southern Coach Company (6927); Tippet Travel, Inc. (8787); Trykap Airport Services, Inc. (0732); Trykap Transportation Management, Inc. (2727); KBUS Holdings, LLC (6419); ACL Leasing, LLC (2058); CAPD, LLC (4454); Coach America Transportation Solutions, LLC (6909); CUSA, LLC (3523); CUSA ASL, LLC (2030); CUSA AT, LLC (2071); CUSA AWC, LLC (2084); CUSA BCCAE, LLC (2017); CUSA BESS, LLC (3610); CUSA CC, LLC (1999); CUSA CSS, LLC (9896); CUSA EE, LLC (1982); CUSA ELKO, LLC (4648); CUSA ES, LLC (1941); CUSA FL, LLC (1920); CUSA GCBS, LLC (1891); CUSA GCT, LLC (1833); CUSA KBC, LLC (1808); CUSA K-TCS, LLC (1741); CUSA Leasing, LLC (1321); CUSA PCSTC, LLC (1701); CUSA PRTS, LLC (1591); CUSA RAZ, LLC (0640); CUSA Transit Services, LLC (8847); Get A Bus, LLC (1907); Coach BCCAE, L.P. (3488); Coach Leasing BCCAE, L.P. (6784). The Debtors' corporate offices are located at 8150 North Central Expressway, Suite M1000, Dallas, Texas 75206.

*Chapter 11 Cases and (D) Granting Related Relief* [Docket No. 1482] (the "Motion to Dismiss") and (ii) the United States Trustee's objection to the *Motion of the Debtors for Entry of an Order Pursuant to 11 U.S.C. §§ 105(a) and 363(b) Approving and Awarding an Incentive Fee to Alvarez & Marsal North America, LLC and Approving the Amended Engagement Letter* [Docket No. 1483] (the "A&M Motion"). In support of this Reply, the Debtors respectfully state as follows:[2]

## REPLY

**I.   MOTION TO DISMISS**

1.   The Debtors received certain responses to the Motion to Dismiss as follows: (i) responses and joinders of various personal injury claimants (collectively, the "Personal Injury Claimants");[3] (ii) objection and joinder of Bridgestone Americas Tire Operations, LLC ("Bridgestone") [Docket Nos. 1509 and 1511]; (iii) responses of certain creditors;[4] and (iv) objection of the United States Trustee (the "U.S. Trustee") [Docket No. 1512] (collectively, the "Responses").

2.   The Debtors and the Prepetition First Lien Agent worked hard to resolve the Response and submit the revised form of order attached hereto as Exhibit A (the "Revised

---

[2]   Capitalized terms used, but not otherwise defined, herein shall have the meanings ascribed to them in the Motion to Dismiss and the A&M Motion, as applicable.

[3]   The Personal Injury Claimants who filed responses or joinders are: (i) Latisha Braden, Cynthia Jackson, Shante Braden, Individually and on Behalf of Minor M.B. [Docket No. 1496]; (ii) the Estate of Todd Burckhard and the Estate of Blaine Mack [Docket Nos. 1497 and 1508]; (iii) Rosalinda Simon and Diego Acosta [Docket No. 1501]; (iv) Carey Seehus, David Klungtvedt, Brian L. Hustad, and Brad Passon [Docket No. 1505]; and (v) Shelia Diane Wishon, Personal Representative of the Estate of Brandy Nicole Richey, and Margaret Coward, Personal Representative of the Estate of James Peter Richey, and Angela Stowe, Personal Representative of the Estate of James Alva Richey, and Rhonda Marie Meeks [Docket No. 1506]

[4]   These responses are: (i) objection of Ken's Alignment [Docket No. 1499], (ii) objection of Michael Yusim [Docket No. 1513] and (iii) response of Nathan Webster (which was filed by the objecting party with the wrong court, but served by facsimile on Debtors' counsel).

Proposed Order"). A copy of the Revised Proposed Order marked to show the changes from the Proposed Order submitted with the Motion to Dismiss is attached hereto as Exhibit B.

3. In order to address general concerns regarding the retention of this Court's jurisdiction post-dismissal, the Debtors propose to keep the lead case of Coach Am Group Holdings Corp. open until the earlier of (i) 90 days from the date the Revised Proposed Order is entered or (ii) resolution of all objections to claims filed on behalf of the GUC Trustee and entry of orders on the final fee applications of all professionals retained in the Chapter 11 Cases, solely for the purposes of allowing the consumer privacy ombudsman appointed in these Chapter 11 Cases to file her final report and adjudicating (i) final fee applications and related issues of professionals retained in the Chapter 11 Cases, (ii) any objections to claims filed on behalf of the GUC Trustee, (iii) the Motion to Compel Los Angeles World Airports to Turnover Property of the Debtors' Estates [Docket No. 1481], (iv) the resolution of claims held by Sierra Liquidity Fund, LLC and (v) the resolution of Bridgestone's alleged post-petition claims and any other litigation related thereto. The Debtors note that all quarterly fees due to the U.S. Trustee have been paid through the first quarter of 2013 and any remaining fees will be paid promptly from the Holdback Amount or the Lender Trust, as set forth in the Revised Proposed Order. In addition, the Debtors are working with one purchaser to promptly complete an ongoing opt-out process to enable the Consumer Privacy Ombudsman to file her report prior to closing the lead case of Coach Am Group Holdings Corp.

4. As detailed below, the Revised Proposed Order includes language to specifically address many of the concerns raised by the objecting parties and therefore many of the objecting parties are now left unaffected by the Motion to Dismiss. Further, for all of the reasons set forth in the Motion to Dismiss and below, the Debtors submit that the relief requested in the Motion to Dismiss is in the best interests of the Debtors' estates and creditors. Accordingly, any unresolved Responses should be overruled and the Motion to Dismiss should be granted as set forth in the Revised Proposed Order.

A.  **Personal Injury Claimants**

5.  With respect to the Personal Injury Claimants, the Revised Proposed Order specifically excludes the Personal Injury Claimants from the releases and makes clear that the rights granted under the Order Granting Motions for Relief from the Automatic Stay, entered on April 30, 2012 [Docket No. 649] and the Joinder Agreements subsequently filed in connection therewith are preserved. Specifically, the Revised Proposed Order excludes any party to the April 30, 2012 Stay Relief Order including any Joinder Agreement from the release language contained in decretal paragraph 14 of the Revised Proposed Order and provides that nothing in that order shall release or bar any claims, causes of action or remedies that any party to the April 30, 2012 Stay Relief Order or the Joinder Agreements subsequently filed in connection therewith has or may have, including against any of the Debtors' insurance policies or any other person or entity.

B.  **Bridgestone**

6.  Bridgestone is attempting to use its objection to the Motion to Dismiss to resolve a dispute over its alleged accounts receivable balance. The Debtors paid all of their ordinary course payables and resolved accounts receivable issues with numerous vendors through and including the closings of five separate sale transactions and paid all of those obligations at or soon after those closings. Bridgestone's delayed responsiveness to the Debtors' many attempts to resolve this remaining accounts receivable issue should not preclude the otherwise appropriate relief of a structured dismissal of these Chapter 11 Cases. Since resolving these issues amicably has not happened at the time of filing of this Reply, contemporaneously with this Reply, the Debtors filed an objection to the claims filed by Bridgestone to be heard on June 6, 2013. In addition, to ensure that there will be no prejudice to Bridgestone as a result of the dismissal of these Chapter 11 Cases, the Revised Proposed Order provides that the Holdback Amount shall be deemed to include the full, although vigorously disputed amount of $1,151,324.75 claimed by Bridgestone as the amount needed to satisfy unpaid ordinary course

trade payables to Bridgestone and incurred by the Debtors between the Petition Date and the Coach USA Closing Date(and not assumed by Coach USA or any other purchaser).

7. As detailed in the Debtors' claims objection, Bridgestone is entitled to no more than $59,692.63, as valid unpaid ordinary course trade payables incurred by the Debtors between the Petition Date and the Coach USA Closing Date pursuant to paragraph 32(d) of the Coach USA Sale Order, plus the sum of $62,745.17 in cure costs for the assumption and assignment to Coach USA of a portion of the critical vendor agreement between the Debtors and Bridgestone dated July 3, 2012. Upon resolution of the dispute, the Debtors intend to pay any amounts that this Court finds are due to Bridgestone from the Holdback Amount in accordance with the Motion to Dismiss and the Revised Proposed Order. Accordingly, nothing in the Motion to Dismiss or the Revised Proposed Order prejudices Bridgestone in any way.

8. Bridgestone's delay in providing invoices to the Debtors has caused issues for the Debtors in resolving amounts due to Bridgestone in these cases. Given that the Debtors have filed an objection to Bridgestone's claims and that this issue will be resolved at a hearing on June 6, 2013, Bridgestone's objection to the Motion to Dismiss should be overruled.

**C.     Other Responses**

9. Ken's Alignment filed a response which is not entirely clear. As an unsecured creditor, Ken's Alignment will be treated along with all other unsecured creditors under the GUC Trust, which was established and funded to provide recoveries for general unsecured creditors and approved by this Court on March 19, 2012 in the Final DIP Order. Likewise, Mr. Yusim and Mr. Webster, to the extent they have valid general unsecured claims, will be treated along with all other general unsecured creditors under the GUC Trust. Thus, the treatment of general unsecured creditors has been in place for over a year and the Motion to Dismiss does not abrogate or impact that treatment in any way. In fact, the Creditors' Committee supports the relief requested in the Motion to Dismiss. Moreover, notice of the

Motion to Dismiss was provided to over 4,800 creditors in accordance with the Bankruptcy Rules and local rules of this Court and it is telling that only these few responses were received.

**D. U.S. Trustee**

10. The U.S. Trustee objects to the Motion to Dismiss on a number of grounds, which are addressed in turn below.

11. The U.S. Trustee first argues that the proposed structured dismissal is not an appropriate use of section 105(a) of the Bankruptcy Code. As set forth in the Motion to Dismiss, the Debtors seek dismissal pursuant to sections 105(a), 349 and 1112(b) of the Bankruptcy Code. While section 1112(b) of the Bankruptcy Code does not specifically mention a "structured dismissal," in this jurisdiction, structured dismissals have been approved under circumstances nearly identical to the circumstances in these Chapter 11 Cases. *See, e.g.*, *In re TSIC, Inc.*, Case No. 08-10322 (KG) (Bankr. D. Del. Aug. 13, 2012) [Docket No. 2745][5] (approving structured dismissal of the debtors' chapter 11 cases under sections 105(a), 305(a) and 1112(b) of the Bankruptcy Code, including authorization to make distributions outside of a chapter 11 plan, where the debtors liquidated virtually all of their assets, had no unencumbered funds and lacked the ability to pay administrative claims in full); *In re G.I. Joe's Holding Corp.*, Case No. 09-10713 (KG) (Bankr. D. Del. Mar. 10, 2011) [Docket No. 753, 773, 804][6] (approving structured dismissal of the debtors' chapter 11 cases under sections 105(a), 305(a), 349 and 1112(b) of the Bankruptcy Code, including authorization to make distributions outside of a chapter 11 plan and releases of secured lender, where the debtors liquidated virtually all of their assets, had no unencumbered funds and lacked the ability to pay administrative and priority claims in full under a plan); *In re TLG Liquidation Corp.*, Case No. 10-10206 (MFW) (Bankr. D. Del. May 20, 2010) [Docket No. 314][7] (approving structured dismissal of the debtors' chapter 11

---

[5] A copy of this order is attached hereto as Exhibit C.

[6] Copies of these three orders are attached hereto as Exhibit D.

[7] A copy of this order is attached hereto as Exhibit E.

cases under sections 105(a), 305, 349, 363 and 1112(b) of the Bankruptcy Code, including authorization to make distributions outside of a chapter 11 plan and approval of settlement agreement containing releases of secured lender and mutual releases in favor of certain directors and debtors, where the debtors liquidated virtually all of their assets, lacked the ability to pay administrative and priority claims in full under a plan and had no remaining meaningful assets to administer); *In re KB Toys, Inc.*, Case No. 08-13269 (KJC) (Bankr. D. Del. Dec. 1, 2009) [Docket No. 914 and 993][8] (approving structured dismissal of the debtors' chapter 11 cases under sections 105(a), 305(a), 349 and 1112(b) of the Bankruptcy Code, including authorization to make distributions outside of a chapter 11 plan, where the debtors liquidated virtually all of their assets, had no unencumbered funds and lacked the ability to pay administrative and priority claims in full under a plan); *In re Wickes Holdings, LLC*, Case No. 08-10212 (KJC) (Bankr. D. Del. May 11, 2009) [Docket No. 1418][9] (approving structured dismissal of the debtors' chapter 11 cases under sections 105(a), 349 and 1112(b) of the Bankruptcy Code, including authorization to make distributions outside of a chapter 11 plan and exculpation of the debtors and the committee and their respective directors, officers, employees, attorneys and other agents, where the debtors liquidated virtually all of their assets, had no unencumbered funds and lacked the ability to pay administrative claims in full).

        12.    As detailed in the Motion to Dismiss, the Debtors do not have sufficient assets to confirm a plan of reorganization or liquidation because the Debtors no longer have any operations and have no funds or unencumbered assets to make all of the payments that would be required to be made under a plan. Pursuant to the Coach USA Sale Order, the only things the Debtors may do are transfer the remainder of the GUC Trust Funds to the GUC Trustee, transfer the Remaining Assets to the Lender Trustee, to be held in trust for the Beneficiary (as defined in the Lender Trust Agreement) subject to the terms of the Lender Trust Agreement, and pay the Holdback Amount in accordance with paragraph 39 of the Motion to Dismiss. Thus, there is no

---

[8]    Copies of these two orders are attached hereto as <u>Exhibit F</u>.

[9]    A copy of this order is attached hereto as <u>Exhibit G</u>.

point in incurring additional administrative expenses when the Debtors are unable to consummate a plan.

13.     Furthermore, the legislative history of section 1112(b) of the Bankruptcy Code and relevant case law indicate that bankruptcy courts have wide discretion to use their equitable powers to dispose of a debtor's case.  H.R. Rep. No. 595, 95th Cong., 1st Sess. 405 (1977); S.Rep. No. 989, 95th Cong., 2d Sess. 117 (1978), reprinted in 1978 U.S.C.C.A.N. 57878; *see also In re Preferred Door Co.*, 990 F.2d 547, 549 (10th Cir. 1993) (stating a court has broad discretion to dismiss a bankruptcy case); *In re Sullivan Cent. Plaza I, Ltd.*, 935 F.2d 723, 728 (5th Cir. 1991) (stating that determination of whether cause exists under section 1112(b) of the Bankruptcy Code "rests in the sound discretion" of the bankruptcy court); *In re Koerner*, 800 F.2d 1358, 1367 & n.7 (5th Cir. 1986) (stating that a bankruptcy court is afforded "wide discretion" under section 1112(b) of the Bankruptcy Code); *Albany Partners, Ltd. v. Westbrook (In re Albany Partners. Ltd.)*, 749 F.2d 670, 674 (11th Cir. 1984) (same).

14.     Alternatively, the Debtors submit that dismissal of these Chapter 11 Cases is warranted pursuant to section 305(a) of the Bankruptcy Code.  Section 305(a) of the Bankruptcy Code, provides, in pertinent part:

> (a)  The court, after notice and a hearing, may dismiss a case under this title,   or may suspend all proceedings in a case under this title, at any time if—
>
> > (1)  the interests of creditors and the debtor would be better served by such dismissal or suspension;

11 U.S.C. § 305(a).

15.     In applying section 305(a) of the Bankruptcy Code, courts consider a wide range of factors, including:

> (a)     economy and efficiency of administration;
>
> (b)     whether federal proceedings are necessary to reach a just and equitable solution;

      (c)      whether there is an alternative means of achieving an equitable distribution of assets; and

      (d)      whether the debtor and the creditors are able to work out a less expensive out-of-court arrangement which better serves the interests in the case.

*See In re Crown Village Farm, LLC*, Case No. 09-11522 (KG), 415 B.R. 86, 96 (Bankr. D. Del. 2009) (enumerating 305(a) factors and denying motion only because dismissal or abstention would have a deleterious effect on the administration of the debtor's chapter 11 case "which would languish while core issues were tried elsewhere"); *see also In re Mazzocone*, 200 B.R. 568, 575 (E.D. Pa. 1996). However, "the exact factors to be considered and the weight to be given to each of them is highly sensitive to the facts of each individual case." *Mazzocone*, 200 B.R. at 575.

      16.      As set forth in the Dismissal Motion and herein, the interests of creditors and the Debtors will be better served by dismissal of these Chapter 11 Cases. This is further evidenced by the support from both the Creditors' Committee and the Prepetition First Lien Agent for dismissal. Moreover, authorizing the distributions contemplated by the Revised Proposed Order and allowing the dismissal of these Chapter 11 Cases furthers the efficient administration of the Debtors' estates and represents the least expensive and most equitable alternative for the distribution of the Debtors' remaining assets. In *In re CSI, Inc.*, Case No. 01-12923 (REG) (Bankr. S.D.N.Y. July 24, 2006) [Docket No. 284],[10] the bankruptcy court granted a structured dismissal under section 305(a)(1) where, as here, there were no additional assets in the debtors' estates available for distribution.

      17.      Accordingly, the Debtors submit that the Chapter 11 Cases should be dismissed due to the substantial or continuing loss to or diminution of their estates and the absence of a reasonable likelihood of rehabilitation and the fact that a proposed plan is not feasible.

---

[10]    A copy of this order is attached hereto as <u>Exhibit H</u>.

18.  The U.S. Trustee next argues that the proposed release and exculpation provisions are not appropriate outside the context of a confirmed plan.  As set forth in the Revised Proposed Order, the Debtors seek, on behalf of the Prepetition First Lien Agent, the Prepetition First Lien Lenders, the Lender Trustee, the Lender Trust and the Creditors' Committee, and the respective present or former officers, directors, employees, members, attorneys, consultants, advisors and agents of the Debtors, the Prepetition First Lien Agent, the Prepetition First Lien Lenders, the Lender Trustee, the Lender Trust and the Creditors' Committee, a release from any and all claims of whatever kind or nature of the Debtors, the Creditors' Committee, creditors of the Debtors' estates and any other party in interest in these Chapter 11 cases, such that, except as otherwise provided in the Revised Proposed Order, all creditors and other parties are barred from pursuing any remedies that they have with respect to claims against any of the parties released.  While previously included, the Debtors themselves are no longer included as a released party under this provision.  Further, the Revised Proposed Order specifically excludes any party to the April 30, 2012 Stay Relief Order from such releases.  Thus, the only constituency likely to potentially hold any significant claims against any of the released parties are not bound by the releases.  The Debtors further seek exculpation for themselves and the aforementioned released parties from any liability to any person for any act taken or omitted to be taken in connection with or related to the formation, preparation, dissemination, implementation, confirmation or consummation of the Motion to Dismiss or the order granting the Motion to Dismiss (other than in contravention of the Motion to Dismiss or the implementation of the Order granting the Motion to Dismiss), or any contract, instrument, release or agreement or document created or entered into, or any other act taken or omitted to be taken in connection with the Motion to Dismiss or the Order granting the Motion to Dismiss.

19.  The Debtors submit that the releases and exculpation provision are appropriate and warranted under the circumstances of these Chapter 11 Cases.  The Debtors, the Prepetition First Lien Lenders and their respective officers, directors and agents did everything they could in these Chapter 11 Cases to maximize value for the benefit of the Debtors' estates.

At the outset of these Chapter 11 Cases, the Debtors and Prepetition First Lien Lenders shared a desire to continue operating the Debtors' business as a going concern. Rather than simply resigning or converting to chapter 7 when it became clear that there would be no return to equity, the Debtors' officers and directors continued their efforts to preserve jobs and contract rights through going concerns. When it became clear that a standalone plan might not be possible, the Debtors immediately began marketing their assets for sale as a restructuring alternative. After an extensive marketing process and highly competitive auction, the Debtors opted to sell substantially all of their operating assets in five separate and often complex transactions to obtain the highest price and maximize recoveries for the estates. The sale process proved to be difficult and required the extensive efforts of the Debtors' management and advisors, particularly because four of the transactions required approval from the Surface Transportation Board, an agency of the United States government that is administratively affiliated with the United States Department of Transportation, which approval process can take months. Because the asset sales had to close quickly to prevent disruption in the transportation industry, an issue that actually raised concerns of national security, the Debtors chose to employ a rarely used structure which allowed the Debtors to transfer assets to a voting trust and close the sales quickly, prior to final approval from the Surface Transportation Board. Ultimately, all of the Debtors' operations were smoothly transitioned to the various purchasers, which saved thousands of jobs and prevented a stoppage of public transportation that could have been catastrophic. This process could not have taken place without the efforts of the Debtors' directors and officers and the cooperation of the Prepetition First Lien Lenders, who allowed the Debtors to operate in these Chapter 11 Cases while essentially bearing the cost of all of the Debtors' post-petition obligations.

20.    The Debtors submit that the success of these Chapter 11 Cases cannot be disputed. Had the Prepetition First Lien Lenders simply foreclosed on their collateral and not permitted the Debtors to file these Chapter 11 Cases, creditors would not have received anything. In these Chapter 11 Cases, however, post-petition trade payables have been or will be paid pursuant to the Coach USA Sale Order, general unsecured creditors will receive a pro rata share

of the GUC Trust Funds and the rights of personal injury claimants have and will remain unaffected. Thus, many parties are better off than they may otherwise have been in these Chapter 11 Cases as a result of the efforts of the parties for whom releases are sought. It is beyond dispute that conversion to a chapter 7 and the appointment of a trustee would impose significant and unnecessary additional administrative costs upon the Debtors' estates. Thus, it would be unfair to deny the released parties, who themselves are receiving limited or no recovery at all, the protections afforded under the Revised Proposed Order. These parties made the success of these Chapter 11 Cases possible and deserve these protections.

21. Moreover, courts have entered orders approving structured dismissals containing broad releases or exculpation provisions for debtors, committees, secured lenders, and/or their respective directors, officers, employees, attorneys and other agents. *See, e.g., In re G.I. Joe's Holding Corp.*, Case No. 09-10713 (KG) (Bankr. D. Del. Mar. 10, 2011) [Docket No. 753, 773, 804] (Exhibit D) (releasing secured lenders from any and all claims of whatever kind or nature of the debtors, the committee, the debtors' claims and noticing agent, the U.S. Trustee, creditors or any other party in interest); *In re TLG Liquidation Corp.*, Case No. 10-10206 (MFW) (Bankr. D. Del. May 20, 2010) [Docket No. 314] (Exhibit E) (approving settlement agreement containing releases of secured lender and mutual releases in favor of certain directors and debtors); *In re Wickes Holdings, LLC*, Case No. 08-10212 (KJC) (Bankr. D. Del. May 11, 2009) [Docket No. 1418] (Exhibit G) (releasing the debtors, the committee and their respective present or former directors, officers, employees, members, attorneys, consultants, advisors and agents from any liability to any person for any act take or omitted to be taken in connection with or related to the formation, preparation, dissemination, implementation, confirmation or consummation of the motion (other than an action in contravention of the motion to the implementation of the order), or any contract, instrument, release or agreement or document created or entered into, or any other act take or omitted to be taken in connection with the motion

or order); *In re Ascendia Brands, Inc.*, Case No. 08-11787 (BLS) (Bankr. D. Del. July 18, 2012) [Docket No. 1230] (approving broad releases of prepetition and post-petition lenders).[11]

22. The Debtors submit that the releases and exculpation provisions here are less inclusive than some of these precedent orders, particularly because the Debtors are not included in the release language and the parties to the April 30, 2012 Stay Relief Order -- the only constituency likely to potentially hold any significant claims against any of the released parties -- are not bound by the release language.

23. The Debtors understand that the U.S. Trustee may have concerns about releases generally, however, the Debtors believe that the facts of these Chapter 11 Cases warrant the inclusion of the releases and exculpation, the inclusion of which is not prohibited by the Bankruptcy Code.

24. The U.S. Trustee next argues that post-dismissal retention of jurisdiction is improper. As set forth above, the Debtors propose to keep the lead case of Coach Am Group Holdings Corp. open until the earlier of (i) 90 days[12] from the date the Revised Proposed Order is entered or (ii) resolution of all objections to claims filed on behalf of the GUC Trustee and entry of orders on the final fee applications of all professionals retained in the Chapter 11 Cases, solely for the purposes of allowing the consumer privacy ombudsman appointed in these Chapter 11 Cases to file her final report and adjudicating (i) final fee applications and related issues of professionals retained in the Chapter 11 Cases, (ii) any objections to claims filed on behalf of the GUC Trustee, (iii) the Motion to Compel Los Angeles World Airports to Turnover Property of the Debtors' Estates [Docket No. 1481], (iv) the resolution of claims held by Sierra Liquidity Fund, LLC and (v) the resolution of Bridgestone's alleged post-petition claims and any other litigation related thereto. The Debtors note that all quarterly fees due to the U.S. Trustee have been paid through the first quarter of 2013 and any remaining fees will be paid promptly from

---

[11] A copy of this order is attached hereto as <u>Exhibit I</u>.

[12] The Creditors' Committee has informed the Debtors that it does not expect the claims resolution process to require more than ninety days.

the Holdback Amount or the Lender Trust, as set forth in the Revised Proposed Order. Accordingly, all of the Debtors' obligations, including the filing of monthly operating reports and the payment of U.S. Trustee fees can and will be met. In addition, as noted above, the Debtors are working with one purchaser to promptly complete an ongoing opt-out process to enable the Consumer Privacy Ombudsman to file her report prior to final closing the lead case of Coach Am Group Holdings Corp.

25. Contrary to the U.S. Trustee's assertion, the Debtors are not requesting that the Court retain jurisdiction post-dismissal of all of the cases (although the Debtors submit that this would also be proper),[13] rather, the Debtors are seeking to delay the dismissal of one of the Chapter 11 Cases in order to resolve a specified set of open issues remaining in these cases. This exact approach was approved by the Court in *In re Butler Services Int'l, In*, Case No. 09-11914 (KJC) (Bankr. D. Del. 2010) [Docket No. 603]. In fact, in that case the U.S. Trustee advocated for this proposal. Despite the Court noting on the record that "there's a body of case law which has been out there for a while which says for certain limited purposes a bankruptcy court can retain jurisdiction post-dismissal", Tr. of Mar. 31, 2010 Hearing at 12:1 – 12:4 [Docket No. 646], the U.S. Trustee went on to state that it was important to keep one case open to avoid jurisdictional issues. *Id.* at 13:2-4. As in *Butler*, the Debtors are attempting to balance the need for efficiency and finality with the need to address the remaining issues in these cases.

26. In addition, the U.S. Trustee's assertion that if there are claims against the other Debtors, then those cases should remain open, is a red herring. Pursuant to the Final DIP

---

[13] Courts have retained jurisdiction post-dismissal to rule on fee applications. *See, e.g.*, *In re Pappas Telecasting, Inc.*, Case No. 08-10916 (PJW) (Bankr. D. Del. June 4, 2010) [Docket No. 2132] (a copy of which is attached hereto as Exhibit J); *In re Alternative Distribution Systems, Inc.*, Case No. 09-13099 (PJW) (Bankr. D. Del. Dec. 1, 2009) [Docket No. 213] (a copy of which is attached hereto as Exhibit K); *In re Wickes Holdings, LLC*, Case No. 08-10212 (KJC) (Bankr. D. Del. May 11, 2009) [Docket No. 1418] (Exhibit G); *In re New Weathervane Retail Corp.*, Case No. 04-11649 (PJW) (Bankr. D. Del. Sept. 2, 2005) [Docket No. 566] (a copy of which is attached hereto as Exhibit L); *In re Harvey Electronics, Inc.*, Case No. 07-14051 (ALG) (Bankr. S.D.N.Y. Dec. 16, 2008) [Docket No. 177] (a copy of which is attached hereto as Exhibit M).

Order, regardless of which Debtor a general unsecured creditor holds its claim against, the only recovery available to such creditor is from the GUC Trust. Final DIP Order ¶ 19(d). Thus, leaving any one of the Debtors' Chapter 11 Cases open to allow for this Court to continue its jurisdiction is a sufficient and appropriate resolution that furthers the fair administration of these estates and conclusion of these Chapter 11 Cases. Thus, the Debtors submit that any such concerns of the U.S. Trustee with regard to post-dismissal administrative matters have been addressed.

27. Finally, the U.S. Trustee argues that no legal authority exists for approval of the Lender Trust Agreement. The Debtors and the Prepetition First Lien Lenders submitted the Lender Trust Agreement to this Court for approval out of an abundance of caution. It is indisputable that the Prepetition First Lien Lenders have an absolute right to their collateral. As set forth in the Final DIP Order, the liens and security interests granted to the Prepetition First Lien Lenders, are valid, binding, perfected, enforceable, first-priority liens and security interests in the personal and real property described in the Existing First Lien Agreements (as defined in the Final DIP Order) and are not subject to avoidance, recharacterization or subordination pursuant to the Bankruptcy Code or applicable nonbankruptcy law. Final DIP Order ¶ 3(a). The Lender Trust Agreement is an entirely appropriate means for transferring the Remaining Assets to the Prepetition First Lien Lenders. By requesting this Court's approval of the Lender Trust Agreement, the Debtors are actually providing more notice to parties in interest than would otherwise be necessary for the Prepetition First Lien Lenders to obtain their collateral post-dismissal.

## II.   A&M MOTION

28. For all the reasons set forth in the A&M Motion and the Prepetition First Lien Agent's statement in support [Docket No. 1493], the Debtors submit that A&M is entitled to be paid the Incentive Fee and the U.S. Trustee's objection to the A&M Motion should be overruled. In the alternative, as set forth above, the Court may find that dismissal is appropriate pursuant to section 305(a) of the Bankruptcy Code, and the U.S. Trustee's objection to the A&M

Motion must be overruled because paragraph 2(b) of the A&M Retention Order, the basis for the U.S. Trustee's objection, will not even have been implicated. This is because only section 1112(b), and not section 305(a), requires "cause" for dismissal, and the A&M Retention Order provides that the A&M Incentive Fee is not payable only if the dismissal of the case is "for cause".

29. Finally, the Prepetition First Lien Agent informed the Debtors and A&M that, in light of A&M's material contribution to these Chapter 11 Cases and the fact that the Incentive Fee, if approved by the Court, will be paid entirely out of the Prepetition First Lien Lenders' collateral, the Prepetition First Lien Agent would be willing to have the Incentive Fee paid out of the Lender Trust following dismissal of these cases. Thus, in the event this Court is not inclined to overrule the U.S. Trustee's objection to the Incentive Fee, the Debtors will withdraw the A&M Motion and propose to have the Incentive Fee paid out of the Lender Trust post-dismissal.

## CONCLUSION

30. For the reasons set forth above, the Debtors submit that the relief requested in the Motion to Dismiss is in the best interests of the Debtors' estates and should be granted as set forth in the Revised Proposed Order and the relief requested in the A&M Motion should be granted.

**[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]**

**WHEREFORE**, the Debtors respectfully request that this Court (i) overrule the Responses, (ii) grant the relief requested in the Motion to Dismiss and enter the Revised Proposed Order, (iii) overrule the U.S. Trustee's objection to the A&M Motion and grant the relief requested in the A&M Motion and (iv) grant the Debtors such other and further relief as this Court deems just and proper.

Respectfully submitted,

**LOWENSTEIN SANDLER LLP**
Sharon Levine, Esq.
S. Jason Teele, Esq.
Nicole Stefanelli, Esq.
65 Livingston Avenue
Roseland, New Jersey 07068
Telephone: (973) 597-2500
Facsimile: (973) 597-2400
slevine@lowenstein.com
steele@lowenstein.com
nstefanelli@lowenstein.com

- and -

**POLSINELLI PC**

  */s/ Christopher A. Ward*
Christopher A. Ward (Del. Bar No. 3877)
Justin K. Edelson (Del. Bar No. 5002)
222 Delaware Avenue, Suite 1101
Wilmington, Delaware 19801
Telephone: (302) 252-0920
Facsimile: (302) 252-0921
cward@polsinelli.com
jedelson@polsinelli.com

*Counsel to the Debtors and Debtors in Possession*

Dated: May 6, 2013
       Wilmington, Delaware