## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| COACH AM GROUP HOLDINGS CORP., *et al.*<br>Debtors. | Case No. 12-10010 (KG) |
| | (Jointly Administered) |
| | Re: Docket Nos. 1482 and 1512 |

**THE PREPETITION FIRST LIEN AGENT'S REPLY TO THE UNITED STATES TRUSTEE'S OBJECTION TO THE MOTION OF THE DEBTORS FOR ENTRY OF AN ORDER PURSUANT TO 11 U.S.C. §§ 105(a), 349 AND 1112(b) AND FED. R. BANKR. P. 1017(a) (A) APPROVING THE TRUST AGREEMENTS, (B) AUTHORIZING THE TRANSFER OF REMAINING ASSETS TO THE LENDER TRUSTEE, (C) DISMISSING THE DEBTORS' CHAPTER 11 CASES AND (D) GRANTING RELATED RELIEF**

JPMorgan Chase Bank, N.A., in its capacity as administrative agent for the Prepetition First Lien Lenders[1] (the "**Prepetition First Lien Agent**" and, together with the Prepetition First Lien Lenders, the "**Prepetition First Lien Parties**"), by and through its undersigned counsel, hereby submits this reply to the *United States Trustee's Objection to the Motion of the Debtors for Entry of an Order Pursuant to 11 U.S.C. §§ 105(a), 349 and 1112(b) and Fed. R. Bankr. P. 1017(a) (A) Approving the Trust Agreements, (B) Authorizing the Transfer of Remaining Assets to the Lender Trustee, (C) Dismissing the Debtors' Chapter 11 Cases and (D) Granting Related Relief* [Docket No. 1512] (the "**Objection**"), and respectfully states as follows:

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion *of the Debtors for Entry of an Order Pursuant to 11 U.S.C. §§ 105(a), 349 and 1112(b) and Fed. R. Bankr. P. 1017(a) (A) Approving the Trust Agreements, (B) Authorizing the Transfer of Remaining Assets to the Lender Trustee, (C) Dismissing the Debtors' Chapter 11 Cases and (D) Granting Related Relief* [Docket No. 1482] (the "**Motion**").

## PRELIMINARY STATEMENT

1.      The Prepetition First Lien Agent submits that the Debtors have met their burden of proof to show that dismissal of these Chapter 11 Cases is warranted under section 1112(b) of the Bankruptcy Code in accordance with the relief sought in the Motion and join the Debtors' request that these Chapter 11 Cases be dismissed.  The proceeds generated by the sales of substantially all of the Debtors' assets were insufficient to satisfy the Debtors' remaining obligations to the Prepetition First Lien Parties.  Thus, pursuant to the Final DIP Order and the Coach USA Sale Order, the Debtors have no remaining assets to administer, and, therefore, cannot confirm a chapter 11 plan of reorganization or liquidation, and no creditors would receive a greater distribution under a chapter 7 liquidation than they would under the proposed dismissal. In recognition of this fact, the Debtors are now seeking to efficiently conclude these cases in an orderly manner that is in the best interests of the Debtors' estates and creditors and within the confines of the Bankruptcy Code.  This is the only available path to avoid a conversion of these cases to chapter 7, which would simply serve to leave the Debtors languishing in bankruptcy incurring administrative expenses beyond their ability to pay.

2.      In connection with the dismissal, the releases and exculpatory relief proposed to be provided to the Prepetition First Lien Parties, the Lender Trustee and the Lender Trust (collectively, the "**Lender Released Parties**") are justified and appropriate under the circumstances.  Through the Final DIP Order, the Coach USA Sale Order and the proposed order granting the relief requested in the Motion (the "**Proposed Order**"),[2] the Prepetition First Lien Parties have agreed to make a portion of their collateral available for distribution to general unsecured creditors and assist in the wind-down of the Debtors' estates by providing for the

---

[2] Simultaneously herewith, the Debtors have filed a revised form of order.  References to the Proposed Order herein shall refer to such revised form of order.

payment of, among other things, all unpaid fees payable to the United States Trustee (the "UST"), valid unpaid ordinary course trade payables incurred by the Debtors between the Petition Date and the Coach USA Closing Date (except to the extent assumed by Coach USA, Inc. or any other purchaser), the Debtors' professional fees and expenses and certain wind-down costs and expenses incurred by the Debtors after the Coach USA Closing Date. None of this would have been possible without the consent of the Prepetition First Lien Parties. In addition, the Prepetition First Lien Parties have spent considerable time and resources working with the Debtors, the Creditors' Committee and various other creditors and parties-in-interest to bring these cases to a successful resolution, which resolution has provided a distribution to general unsecured creditors that was supported by the Creditors' Committee and preserved thousands of jobs. In addition, during these Chapter 11 Cases, personal injury claimants continued to have the ability to pursue their rights and remedies against the Debtors' insurance policies, and, importantly, the Proposed Order has no effect on such individuals' abilities to pursue their rights and remedies against the Debtors or any other party.

3.    The Motion, which clearly and unambiguously addresses the proposed releases and exculpatory relief, was properly served on the more than 4,800 creditors of these estates in accordance with the Bankruptcy Rules and the Local Rules. The only response or objection to the releases or exculpation of the Lender Released Parties was filed by the UST. Notably, no creditor has filed an objection to these provisions with respect to the Lender Released Parties.[3] Nor has any creditor—at any time in these Chapter 11 Cases—alleged that the

---

[3] Certain of the objections filed by personal injury claimants did object to the release of any party to the extent that it would affect such objectors' claims. The Prepetition First Lien Agent is not aware of any effect that the release of the Lender Released Parties could have on such claims. However, in an effort to ensure that these claimants were in no way prejudiced, the Prepetition First Lien Agent has agreed to exempt the personal injury claimants from the release provisions of the Proposed Order altogether. In addition, the Prepetition First Lien Agent does not characterize the *Objection of*

Lender Released Parties have engaged in any conduct that would not entitle them to such relief. In fact, the Creditors' Committee supports the dismissal and relief requested in the Proposed Order, including the proposed releases and exculpatory relief.

4. Accordingly, for the reasons set forth herein, the Prepetition First Lien Agent requests that the Objection be denied and the relief requested in the Motion be approved.

**REPLY**

**A. THE PROPOSED DISMISSAL IS APPROPRIATE UNDER THE BANKRUPTCY CODE**

5. For all of the reasons set forth in the Motion, the Prepetition First Lien Agent agrees with the Debtors that cause exists to dismiss these Chapter 11 Cases under section 1112(b) of the Bankruptcy Code, and that such dismissal is in the best interests of the Debtors' estates and creditors. There is no business for the Debtors' to reorganize, and there are no funds available to confirm a chapter 11 plan or for use in a chapter 7 liquidation. All of the remaining proceeds from the sales of the Debtors' assets remain in the Wind-Down Carve Out Account, and such proceeds are required to be paid to the GUC Trustee, in accordance with paragraph 19 of the Final DIP Order, and the Prepetition First Lien Agent in accordance with paragraph 33 of the Coach USA Sale Order. Further, the Debtors are obligated, pursuant to paragraph 32 of the

---

*Bridgestone Americas Tire Operations, LLC to (I) Debtors' Motion to Dismiss Debtors' Chapter 11 Cases [Docket No. 1482], and (II) Debtors' Motion to Approve and Award Incentive Fee to Alvarez & Marsal North America, LLC [Docket No. 1483]* [Docket No. 1509] as an objection to the proposed releases and exculpation of the Lender Released Parties. Bridgestone Americas Tire Operations, LLC ("**Bridgestone**") and the Debtors are engaged in a commercial dispute, which is unrelated to the Lender Released Parties and will be resolved by this Court at the appropriate time. To the extent this Court determines that Bridgestone is entitled to payment from the Debtors, Bridgestone will receive such payment as the Prepetition First Lien Agent has agreed to add to the Holdback Amount $1,151,324.75, which represents the full amount of Bridgestone's alleged post-petition claim, solely for the purpose of satisfying any valid unpaid ordinary course trade payables to Bridgestone and incurred by the Debtors between the Petition Date and the Coach USA Closing Date and not assumed by Coach USA or any other purchaser of the Debtors' assets. Thus, under the Proposed Order, Bridgestone's issues will be addressed by this Court at the appropriate time, and the Proposed Order does not prejudice them with respect to their asserted claims.

RLF1 8564764v.1

Coach USA Sale Order, to pay to the Prepetition First Lien Agent any other proceeds that they may receive from the sale or other monetization of any of the Debtors' remaining assets.

   6.  Importantly, the UST does not argue that conversion of these cases serves the best interests of these estates and creditors. Rather, the UST argues only that the relief requested by the Motion is not authorized by the Bankruptcy Code. However, the UST does not cite to any provision in the Bankruptcy Code or any case that prohibits structured dismissals or the relief the Debtors request related thereto. In fact, there is no such provision, and while there are very few reported or unreported decisions addressing structured dismissals, courts in this District and around the country are frequently entering orders approving structured dismissals in circumstances similar to those here, where (a) the debtor lacks the requisite financial ability to confirm a chapter 11 plan and (b) dismissal, rather than conversion to chapter 7, serves the best interests of the debtor's estate and creditors.[4]

---

[4] *See, e.g., In re Ascendia Brands, Inc.*, Case No. 08-11787 (BLS) (Bankr. D. Del. July 18, 2012) [Docket No. 1230]; *In re G.I. Joe's Holding Corp.*, Case No. 09-10713 (KG) (Bankr. D. Del. Mar. 10, 2011) [Docket Nos. 753, 773, 804]; *In re Thompson Prods., Inc.*, Case No. 08-10319 (PJW) (Bankr. D. Del. Dec. 28, 2010) [Docket Nos. 512, 542]; *In re Distributed Energy Systems Corp.*, Case No. 08-11101 (KG) (Bankr. D. Del. Sept. 24, 2010) [Docket No. 891]; *In re Pappas Telecasting, Inc.*, Case No. 08-10916 (PJW) (Bankr. D. Del. June 4, 2010) [Docket No. 2132]; *In re TLG Liquidation, LLC*, Case No. 10-10206 (MFW) (Bankr. D. Del. May 20, 2010) [Docket No. 314]; *In re Butler Servs. Int'l, Inc.*, Case No. 09-11914 (KJC) (Bankr. D. Del. Apr. 13, 2010) [Docket No. 603]; *In re CFM U.S. Corp.*, Case No. 08-10668 (KJC) (Bankr. D. Del. Feb. 1, 2010) [Docket No. 1282]; *In re Foamex Int'l Inc.*, Case No. 09-10560 (KJC) (Bankr. D. Del. Jan. 20, 2010) [Docket No. 761]; *In re Alternative Distribution Systems, Inc.*, Case No. 09-13099 (PJW) (Bankr. D. Del. Dec. 1, 2009) [Docket No. 213]; *In re KB Toys, Inc.*, Case No. 08-13269 (KJC) (Bankr. D. Del. Dec. 1, 2009) [Docket No. 914]; *In re Wickes Holdings, LLC*, Case No. 08-10212 (KJC) (Bankr. D. Del. May 11, 2009) [Docket No. 1418]; *In re Magnolia Energy L.P.*, Case No. 06-11069 (MFW) (Bankr. D. Del. Feb. 12, 2007) [Docket No. 196]; *In re New Weathervane Retail Corp.*, Case No. 04-11649 (PJW) (Bankr. D. Del. Sept. 4, 2005) [Docket No. 566]; *In re Bag Liquidation, Ltd.*, Case No. 08-32096 (SGJ) (Bankr. N.D. Tex. Sept. 30, 2009) [Docket No. 688]; *In re Dawahare's of Lexington, LLC*, Case No. 08-51381 (JMS) (Bankr. E.D. Ky. Dec. 30, 2008) [Docket No. 316]; *In re Harvey Elecs., Inc.*, Case No. 07-14051 (ALG) (Bankr. S.D.N.Y. Dec. 15, 2008) [Docket No. 177]; *In re Levitz Home Furnishings, Inc.*, Case No. 05-45189 (BRL) (Bankr. S.D.N.Y. Mar. 28, 2008) [Docket No. 1167]; *In re Scient, Inc.*, Case No. 02-13455 (AJG) (Bankr. S.D.N.Y. Dec. 20, 2006) [Docket No. 821]; *In re CSI, Inc.*, Case No. 01-12923 (Bankr. S.D.N.Y. July 24, 2006) (REG) [Docket No. 284].

**B.     THE PROPOSED RELEASES AND EXCULPATION OF THE LENDER RELEASED PARTIES ARE APPROPRIATE AND JUSTIFIED UNDER THE CIRCUMSTANCES**

7.     The proposed releases and exculpatory relief are permissible under the Bankruptcy Code and existing case law.  The UST argues that the Motion improperly seeks releases and exculpatory relief for all of the released parties because the consent or agreement of affected parties has not been obtained and because they are outside the context of a chapter 11 plan.  Objection at ¶ 24.

8.     With respect to the relief requested in paragraph 13 (which was paragraph 14 of the proposed order exhibited to the Motion), the Lender Released Parties are merely seeking confirmation that they are not liable for the funding of obligations of the Debtors.  The Prepetition First Lien Parties have funded these Chapter 11 Cases since the Petition Date and, an appropriate amount of funds (the Holdback Amount) is being left in the estates to handle post-dismissal issues.  Thus, following dismissal and the transfer of the Remaining Assets, which consists solely of the Prepetition First Lien Parties' collateral, to the Lender Released Parties, it would be wholly inappropriate for creditors of the Debtors to be able to look to the Lender Released Parties for the payment of their claims.

9.     With respect to the proposed releases in paragraph 14 of the Proposed Order (which was paragraph 15 of the proposed order exhibited to the Motion), the Prepetition First Lien Parties are entitled to receive releases from the Debtors and non-debtor third parties. There is no bright line test in the Third Circuit to determine whether releases by a debtor are appropriate in the chapter 11 context. *In re Washington Mutual, Inc.*, 442 B.R. 314, 346 (Bankr. D. Del. 2011).  The five-part test set forth in *In re Master Mortgage Inv. Fund, Inc.*, 168 B.R. 930, 937 (Bankr. W.D. Mo. 1994) and adopted in *In re Zenith Electronics Corp.*, 241 B.R. 92,

RLF1 8564764v.1

111(Bankr. D. Del. 1999) provides guidance, and the five factors are neither exclusive, nor conjunctive. *Washington Mutual*, 442 B.R. at 346. Such factors include "substantial contribution by the non-debtor of assets to the reorganization", and "the essential nature of the injunction to the reorganization to the extent that, without the injunction, there is little likelihood of success." *Zenith*, 241 B.R. at 110. As to releases by non-debtor third parties, contrary to the UST's assertions, non-consensual non-debtor releases are not prohibited in the Third Circuit. In *Gilbert v. Continental Airlines (In re Continental Airlines)*, 203 F.3d 203, 214 n.11 (3d Cir. 2000), the Third Circuit declined to establish such a blanket prohibition. Rather, courts look to the principles of fairness, necessity and specific factual circumstances that warrant such relief. *Id. See, e.g., In re Genesis Health Ventures, Inc.*, 266 B.R. 591, 607-08 (Bankr. D. Del. 2001) (holding that non-consensual releases may be approved where (i) the non-consensual release is necessary to the success of the reorganization; (ii) the releasees have provided a critical financial contribution to the debtor's plan; (iii) the releasees' financial contribution is necessary to make the plan feasible; and (iv) the release is fair to the non-consenting creditors). In applying these factors to proposed releases in connection with a structured dismissal, there is no question here that the Prepetition First Lien Parties are entitled to such releases.

10.    With respect to the exculpatory relief in paragraph 15 of the Proposed Order (which was paragraph 16 of the proposed order exhibited to the Motion), this provision is narrowly tailored and limited to claims in connection with or arising out of the Motion and Order. It would be blatantly unjust for this Court to approve a dismissal of these Chapter 11 Cases only to leave the parties who requested and supported such relief exposed to potential future claims, arising out of the dismissal itself, from parties who opposed this relief. This same provision was approved with respect to a non-debtor third party in *In re CFM U.S. Corp*, Case

RLF1 8564764v.1

No. 08-10668 (KJC) (Bankr. D. Del. June 30, 2009) [Docket No. 1097],[5] where the debtors' prepetition lender was released from any liability for any act taken in connection with the dismissal motion or order Motion and Order, or any contract, instrument, release or agreement or document created or entered into, or any other act taken or omitted to be taken in connection with the dismissal motion or order.

11.    Notably, the UST has not cited any provision of the Bankruptcy Code or any case that prohibits releases or exculpatory relief outside of a plan of reorganization.  For the same reasons that this Court approves releases, injunctions and exculpatory relief under a plan, this Court may approve similar provisions in a structured dismissal, particularly where, as here, creditors did not object to such provisions.  Thus, in the apparent growing trend of approved structured dismissals, this Court and numerous other courts in this District and others have approved these types of provisions in connection with such dismissals.  In fact, this Court approved lender releases similar to those requested here in *In re G.I. Joe's Holding Corp.*, Case No. 09-10713 (KG) (Bankr. D. Del. Mar. 10. 2011) [Docket No. 753].[6]  In approving those releases, this Court overruled a similar objection by the UST, finding that the releases were

---

[5] Due to the voluminous nature of the publicly-filed documents referenced herein, they are not being filed with this Reply.  All such documents are available from counsel to the Prepetition First Lien Agent upon request.

[6] The two relevant provisions in that order provided:

4.    Except with respect to the performance of obligations undertaken in the Settlement Stipulation, under no circumstances shall the Prepetition Term Loan B Secured Parties be liable for any funding of, or the making of any payments related to, obligations of the Debtors' estates, including, without limitation, payment of any claims of any creditors of the Debtors or fees and expenses of the Case Professionals and BMC (including, without limitation, any further funding of the Carve Out or the Wind Down Carve Out), none of which shall be chargeable to, or be the responsibility of, the Prepetition Term Loan B Secured Parties.

5.    Except with respect to the performance of obligations undertaken in the Settlement Stipulation, the Prepetition Term Loan B Secured Parties and the Prepetition Secured Parties are hereby released from any and all claims of whatever kind or nature of the Debtors, the Committee, BMC, the US Trustee, creditors of these estates or any other party in interest in these chapter 11 cases.

-8-

"appropriate" because they were negotiated by all parties, they benefitted all creditors and ample consideration was provided. Tr. of Hearing, Mar. 10, 2001 at 27:13-18 [Docket No. 764]. *See also In re Ascendia Brands, Inc.*, Case No. 08-11787 (BLS) (Bankr. D. Del. July 18, 2012) [Docket No. 1230] (approving broad releases of prepetition and post-petition lenders).

       12.     Here, the Prepetition First Lien Parties have made a substantial contribution to these Chapter 11 Cases and, through the settlements reflected in both the Final DIP Order and the Coach USA Sale Order, the Prepetition First Lien Parties have tendered adequate consideration for the proposed releases. Pursuant to the Final DIP Order, which represented a comprehensive and good-faith agreement between the Prepetition First Lien Parties, the Debtors and the Creditors' Committee, the Prepetition First Lien Parties have carved out approximately $1,950,000 of their collateral for the benefit of the general unsecured creditors of the Debtors' estates, providing general unsecured creditors with a recovery that they would not otherwise have received. In addition, under the Coach USA Sale Order, the Prepetition First Lien Parties have provided the Debtors with over $34 million to fund certain expenses necessary to the wind-down of the Debtors' estates and dismissal of these Chapter 11 Cases, including to satisfy UST fees, professional fees and expenses, certain ordinary course trade payables and other miscellaneous wind-down expenses.

       13.     In addition to the consideration outlined above, the Prepetition First Lien Parties' involvement in these Chapter 11 Cases has been significant and beneficial. As recognized by this Court, these Chapter 11 Cases have been "very, very smoothly and well-handled", Tr. of Hearing, Mar. 5, 2013 at 8:20-24, and the success of the sale process was recognized in the turnaround industry when the Debtors' and the Prepetition First Lien Lenders' advisors were recently awarded Restructuring Deal of the Year (Over $100mm to $500mm) and

Sector Deal of the Year Award - - Industrial Goods and Basic Resources (Over $50mm) by The M&A Advisor at the 7th Annual Turnaround Awards.  At each step, the Prepetition First Lien Agent assisted the Debtors and their advisors with developing the Debtors' restructuring framework, working with them to negotiate the terms of a possible standalone chapter 11 plan, which subsequently served as the highest and best bid at the initial auction for the sale of substantially all of the Debtors' assets.  The submission of the Prepetition First Lien Agent's credit bid led to two highly competitive auctions and, ultimately, the submission of higher and better offers at the second auction.  The Prepetition First Lien Agent then worked with the Debtors and the various purchasers to negotiate in good faith fair and reasonable sale agreements and consummate the sales of substantially all of the Debtors' assets, which sales were found by this Court to be in the best interests of the Debtors, their creditors and their estates.  Coach USA Sale Order ¶ S.

14.    Further, in connection with the proposed dismissal, providing the proposed releases to the Prepetition First Lien Parties is more than fair given their proposed assistance with the Debtors' dismissal of these Chapter 11 Cases, through the Debtors' use of the Holdback Amount, which consists of the Prepetition First Lien Parties' collateral, and with effectuating the process and distribution contemplated by the Final DIP Order and the Coach USA Sale Order.  Accordingly, in view of the considerable and meaningful concessions and sacrifices made by the Prepetition First Lien Parties, there can be no question that approval of the proposed releases is appropriate and justified.

15.    Finally, it must be noted that the effect of the proposed releases are narrow in scope.  Importantly, the Prepetition First Lien Parties have already received releases on their prepetition liens and claims, and their post-petition liens and claims are insulated by the terms of

RLF1 8564764v.1

the Final DIP Order.  Final DIP Order ¶ 17.  The Creditors' Committee previously and independently assessed the value of any potential actions against the Prepetition First Lien Parties, and determined that no viable cause of action exists.  The time for the Creditors' Committee to commence any such action against the Prepetition First Lien Parties has expired pursuant to the terms of the Final DIP Order with no such challenge having been made.  Further, this Court has already found that the Prepetition First Lien Parties have no liability to any party on account of any unpaid administrative expenses or claims against the Debtors.  Coach USA Sale Order ¶ 33.  The UST, who attended and appeared at the hearings on the Final DIP Order and the Coach USA Sale Order, raised no objections to the releases contained in those Orders.  Accordingly, given the existing limitations on the Prepetition First Lien Parties' liability, the releases contained in the Proposed Order are simply designed to prevent parties from seeking post-dismissal recourse against the Prepetition First Lien Parties.

16.    As to the proposed releases and exculpation of the Lender Trustee and the Lender Trust,[7] the Prepetition First Lien Agent submits that these are also appropriate and justified given the identity of interest between the Prepetition First Lien Parties and the Lender Trustee and the Lender Trust.  Under the Lender Trust Agreement, the Prepetition First Lien Agent, on behalf of the Prepetition First Lien Lenders, is the sole beneficiary of the Lender Trust, and the transfer of the Remaining Assets to the Lender Trust is, in effect, a transfer of the Prepetition First Lien Lenders' collateral to the Prepetition First Lien Agent.  Thus, for the same reasons that the Prepetition First Lien Parties should receive the benefit of the proposed releases

---

[7] The UST asserts that it is not clear why this Court's approval of the Lender Trust Agreement is necessary and what legal authority supports the Debtors' request for such approval.  The Debtors are a party to the Lender Trust Agreement.  Thus, out of an abundance of caution in the event this transaction was not considered to be in the ordinary course of the Debtors' business, and in an effort to be transparent with this Court and all parties-in-interest, the Debtors sought approval of the Lender Trust Agreement in the Motion.  It is surprising that the UST could view such a request as in any way controversial.

and exculpatory relief as set forth above, the Lender Trust, which holds the Prepetition First Lien Parties' collateral in trust for the benefit of the Prepetition First Lien Agent, must receive these same benefits.  Similarly, were the Lender Trustee and the Lender Trust not to receive the same releases and exculpatory relief, a creditor of the Debtors could inappropriately seek recovery from the Lender Trust in order to satisfy such liabilities of the Debtors.  Thus, in order to avoid any end run around the releases and exculpatory relief provided to the Prepetition First Lien Parties, the Lender Trustee and the Lender Trust must receive the same relief.  Other courts have barred creditors from bringing any claims against accounts holding non-debtor funds and the custodians of such funds.  *See, e.g.*, *In re New Weathervane Retail Corp.*, Case No. 04-11649 (PJW) (Bankr. D. Del. Sept. 2, 2005) (barring any creditor from asserting any claim against a specified carve out account and the escrow agent for such account); *In re Blades Board and Skate, LLC*, Case No. 03-48818 (NLW) (Bankr. D. N.J. June 29, 2004) [Docket No. 126] (barring any creditor from pursuing any remedies that they have against any third parties as such claims relate to the debtors or asserting any claims against a general unsecured creditors' fund and counsel acting as escrow and/or distribution agent of such fund); *In re Harvey Electronics, Inc.*, Case No. 07-14051 (ALG) (Bankr. S.D.N.Y. Dec. 16, 2008) [Docket No. 177] (barring any creditor from asserting any claims against a general unsecured creditors' fund and the custodian of such fund).

WHEREFORE, the Prepetition First Lien Agent respectfully requests that the

Court overrule the Objection and enter the Proposed Order.


Dated: May 6, 2013                    Respectfully submitted,
        Wilmington, Delaware

                                      RICHARDS, LAYTON & FINGER, P.A.
                                      Mark D. Collins (Del. Bar No. 2981)
                                      Jason M. Madron (Del. Bar No. 4431)
                                      Lee E. Kaufman (Del. Bar No. 4877)
                                      One Rodney Square
                                      920 North King Street
                                      Wilmington, Delaware 19801
                                      Telephone: (302) 651-7700
                                      Facsimile: (302) 651-7701
                                      collins@rlf.com
                                      madron@rlf.com
                                      kaufman@rlf.com

                                              -and-

                                      DAVIS POLK & WARDWELL LLP
                                      Brian M. Resnick, Esq.
                                      Michelle M. McGreal, Esq.
                                      450 Lexington Avenue
                                      New York, New York 10017
                                      Telephone: (212) 450-4000
                                      Facsimile: (212) 701-5800
                                      brian.resnick@davispolk.com
                                      michelle.mcgreal@davispolk.com

                                      *Counsel to the Prepetition First Lien Agent*

RLF1 8564764v.1