**ORIGINAL**

# UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| COACH AM GROUP HOLDINGS CORP., et al.[1] | Case No. 12-10010 (KG) |
| Debtors. | (Jointly Administered) |
| | Re: Docket No. 1482 |

## ORDER PURSUANT TO 11 U.S.C. §§ 105(a), 349 AND 305(a) AND BANKRUPTCY RULE 1017(a) (A) APPROVING TRUST AGREEMENTS, (B) AUTHORIZING THE TRANSFER OF REMAINING ASSETS TO THE LENDER TRUSTEE, (C) DISMISSING THE DEBTORS' CHAPTER 11 CASES AND (D) GRANTING RELATED RELIEF

Upon consideration of the motion (the "**Motion**")[2] of the Debtors for entry of an order, approving the Trust Agreements, authorizing the transfer of the Remaining Assets, dismissing the Debtors' chapter 11 cases and granting related relief; and the Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157(a) and (b) and 1334(b) and the *Amended Standing Order of Reference* dated February 29,

---

[1] Coach Am Group Holdings Corp. (4830); Coach Am Holdings Corp. (1816); Coach America Holdings, Inc. (2841); American Coach Lines, Inc. (2470); America Charters, Ltd. (8246); CUSA Atlanta, Inc. (4003); American Coach Lines of Jacksonville, Inc. (0136); American Coach Lines of Miami, Inc. (7867); American Coach Lines of Orlando, Inc. (0985); Coach America Group, Inc. (2816); B & A Charter Tours, Inc. (9392); CUSA Dillon's, Inc. (5559); Florida Cruise Connection, Inc. (9409); Hopkins Airport Limousine Services, Inc. (1333); CUSA LL, Inc. (5309); The McMahon Transportation Company (0030); Midnight Sun Tours, Inc. (2791); Royal Tours of America, Inc. (2313); Southern Coach Company (6927); Tippet Travel, Inc. (8787); Trykap Airport Services, Inc. (0732); Trykap Transportation Management, Inc. (2727); KBUS Holdings, LLC (6419); ACL Leasing, LLC (2058); CAPD, LLC (4454); Coach America Transportation Solutions, LLC (6909); CUSA, LLC (3523); CUSA ASL, LLC (2030); CUSA AT, LLC (2071); CUSA AWC, LLC (2084); CUSA BCCAE, LLC (2017); CUSA BESS, LLC (3610); CUSA CC, LLC (1999); CUSA CSS, LLC (9896); CUSA EE, LLC (1982); CUSA ELKO, LLC (4648); CUSA ES, LLC (1941); CUSA FL, LLC (1920); CUSA GCBS, LLC (1891); CUSA GCT, LLC (1833); CUSA KBC, LLC (1808); CUSA K-TCS, LLC (1741); CUSA Leasing, LLC (1321); CUSA PCSTC, LLC (1701); CUSA PRTS, LLC (1591); CUSA RAZ, LLC (0640); CUSA Transit Services, LLC (8847); Get A Bus, LLC (1907); Coach BCCAE, L.P. (3488); Coach Leasing BCCAE, L.P. (6784). The Debtors' corporate offices are located at 8150 North Central Expressway, Suite M1000, Dallas, Texas 75206.

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Motion.

26163/2
05/31/2013 24169370.7

2012 (Sleet, C.J.); and consideration of the Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b)(2) in which the Court may enter a final order; and venue being proper pursuant to 28 U.S.C. §§ 1408 and 1409; and notice of the Motion being sufficient; and the Court having conducted a hearing on the Motion at which time all parties in interest were given an opportunity to be heard; and the Court having determined that granting the relief requested in the Motion is in the best interests of the Debtors, their estates and creditors; and any objections filed with respect to the Motion having been withdrawn or overruled by the Court; and after due deliberation and sufficient cause appearing therefor;

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT**:

1. The Motion is granted as set forth herein.

2. Pursuant to section 305(a) of the Bankruptcy Code, the Debtors' Chapter 11 Cases are hereby dismissed except as provided in paragraph 16 hereof.

3. Notwithstanding section 349 of the Bankruptcy Code, all prior Orders of this Court entered in the Chapter 11 Cases shall remain in full force and effect and shall survive the dismissal of the Chapter 11 Cases. Notwithstanding the generality of the foregoing, nothing in the Motion, this Order, the GUC Trust Agreement or the Lender Trust Agreement shall affect or prejudice the *Order Granting Motions for Relief from the Automatic Stay*, entered on April 30, 2012 [Docket No. 649] (the "**4/30/12 Relief from Stay Order**") or the Joinder Agreements subsequently or contemporaneously filed in connection with the 4/30/12 Relief from Stay Order, the actions and claims relating to the 4/30/12 Relief from Stay Order and the Joinder Agreements thereto, including, without limitation, any claims, causes of actions or remedies with respect thereto against any person or entity, and including any claims not yet asserted with respect thereto (hereinafter, the "**Pending Tort Claims**"), or insurance coverage applicable to the Pending Tort Claims; *provided, however*, that parties to the 4/30/12 Relief from Stay Order, including those joining same, are deemed Beneficiaries of the GUC Trust to the extent that each such party holds or may come to hold an allowed general unsecured claim not covered and paid by applicable insurance and subject to the terms and conditions of the 4/30/12 Relief from Stay

Order. Nothing in this Order, including any assignment of rights, claims, or interests, shall release the Debtors from any obligation or liability with respect to any Pending Tort Claim for which they would have otherwise been responsible. Furthermore, nothing in this Order, including any assignment of rights, claims, or interests, shall impair, supplement, change, expand, decrease, or modify any of the terms, provisions, conditions, limitations, rights, or obligations arising under or in connection with any Insurance Policy (as defined below).

4. The GUC Trust Agreement is hereby approved. The Debtors, the GUC Trustee and the Creditors' Committee are authorized to take all actions and execute all documents that are reasonably required to implement and effectuate the terms of the GUC Trust Agreement.

5. Within fifteen (15) days of the entry of this Order, the Debtors shall transfer the remainder of the GUC Trust Funds to the GUC Trustee in accordance with paragraphs 19(b)(ii) and (iii) of the Final DIP Order.

6. The GUC Trustee is authorized and directed to administer the GUC Trust and distribute the GUC Trust Funds pursuant to the terms of the GUC Trust Agreement and prosecute claims objections (notwithstanding that such claims may not have been filed against Debtor Coach Am Group Holdings Corp.), with all related professional fees and expenses, including those of the Debtors' professionals, to be paid solely out of the GUC Trust to the extent the GUC Trust requires any of the Debtors' professionals to provide services from and after the date of entry of this Order.

7. Within fifteen (15) days of the entry of this Order, the Debtors shall pay all outstanding United States Trustee fees pursuant to 28 U.S.C. § 1930.

8. The Debtors are authorized and directed to transfer the Adequate Assurance Deposit (as such term is defined in the *Final Order Pursuant to 11 U.S.C. §§ 105(a) and 366 (i) Prohibiting Utility Providers from Discontinuing, Altering or Refusing Service on Account of Prepetition Invoices, (ii) Deeming Utility Providers to Have Adequate Assurance of*

*Future Payment, and (iii) Establishing Procedures for Resolving Requests for Additional Assurance*, entered on January 27, 2012 [Docket No. 292]) to the Lender Trust.

9. The Lender Trust Agreement is hereby approved. The Debtors, the Lender Trustee and the Prepetition First Lien Agent are authorized to take all actions and execute all documents that are reasonably required to implement and effectuate the terms of the Lender Trust Agreement.

10. Upon entry of this Order and until the transfer occurs, the Debtors must preserve all files and records relating to the Pending Tort Claims that were previously maintained by the Debtors, and shall transfer such files and records to the Lender Trustee. The Debtors shall be deemed to have transferred all rights, title and interests in the Remaining Assets to the Lender Trustee, to be held in trust for the Beneficiary (as defined in the Lender Trust Agreement), subject to the terms of the Lender Trust Agreement, free and clear of all liens, claims, encumbrances, and other interests, and the Debtors shall have no further interest in or with respect to such Remaining Assets; *provided, however*, that the Remaining Assets transferred to the Lender Trust shall not include any of the Debtor's insurance policies other than the Insurance Policies (as defined below), but shall include all of the Debtors' claims under any of such insurance policies other than liability insurance policies. For the avoidance of doubt, any of the Debtors' insurance policies that are not Insurance Policies shall not be affected by this Order except that payments of claims made under any such insurance policies (other than liability insurance policies) shall be subject to the following sentence. Other than the remaining GUC Trust Funds and the Holdback Amount, all cash that from time to time comes into the possession of the Debtors' estates (whether from proceeds of sales or other monetization of assets, uncollected receivables, tax refunds, pending causes of action, release of cash collateral supporting letters of credit or otherwise) shall be turned over to the Lender Trustee to be held in trust for the Beneficiary subject to the terms of the Lender Trust Agreement, and the Debtors shall use commercially reasonably efforts to notify any payor of such cash that any such amount shall be paid directly to the Lender Trustee by such payor in accordance with this Order.

Notwithstanding any change of control, restriction on transfer or similar provision contained in any insurance policies issued by National Union Fire Insurance Company of Pittsburgh, PA and/or certain of its affiliates, including Lexington Insurance Company (collectively, "**AIG**"), or agreements related thereto (collectively, the "**Insurance Policies**"), any interest of the Debtors in the Insurance Policies or any interest of the Debtors in collateral presently held by AIG pursuant to any of the Insurance Policies shall constitute Remaining Assets and shall be transferred to the Lender Trust subject to all the terms and conditions of the Insurance Policies, including any obligation to arbitrate any dispute arising from or in connection therewith, and nothing herein is intended to nor shall it alter any terms or conditions of the Insurance Policies. For the avoidance of doubt, the Lender Trust shall have all rights as the insured under the Insurance Policies to receive any collateral from AIG to the extent such collateral is not needed, permitted or authorized to satisfy any obligations of the Debtors to AIG secured by such collateral. The transfer to the Lender Trust of any interest in any Insurance Policy, and actions undertaken in accordance with this Order, shall not impair, supplement, change, expand, decrease, or modify any of the terms, provisions, conditions, limitations, rights, or obligations arising under or in connection with any Insurance Policy. This transfer is being made with the consent of AIG and therefore does not violate any anti-assignment provision of any Insurance Policy. From and after the entry of this Order, the Lender Trust shall maintain all files and documents relating to the Insurance Policies and the Pending Tort Claims, which were previously maintained by the Debtors, including without limitation, claim files; *provided, however*, that, at the election of the Lender Trust in its sole discretion, or in the event the Lender Trust ceases to exist, liquidates or dissolves, such files and documents shall be transferred to the sole custody of AIG, and, upon such transfer, the Lender Trustee and the Lender Trust shall have no further obligation to maintain or produce such files and documents. The transfer to the Lender Trust or AIG of the files and documents related to the Pending Tort Claims shall not supplement, change, expand, decrease or modify the discovery rights of the holders of Pending Tort Claims, *provided, however*, that, as long as they remain in possession of the files and documents relating to the

Pending Tort Claims, the Lender Trust and AIG, as may be applicable, shall have the obligations of the Debtors to address discovery requests with respect to such files and documents without the need for the holders of the Pending Tort Claims to utilize third-party discovery procedures. Notwithstanding anything to the contrary contained in any of the Insurance Policies, the Lender Trustee may terminate the Lender Trust Agreement in accordance with its terms, and the Lender Trustee may liquidate or dissolve the Lender Trust at any time. For the avoidance of doubt, the Prepetition First Lien Agent, the Prepetition First Lien Lenders, the Lender Trust and the Lender Trustee shall not have any obligation to make (i) any payments to any person or entity required to be made under the Insurance Policies by virtue of such transfer or (ii) any payments to any party with a Pending Tort Claim based on liability of the Debtors or any of their employees, officers or directors. The transfer of the Insurance Policies will not have any effect on the claims administration process or the payment of claims. AIG will continue to adjust claims in accordance with the terms, conditions, obligations and limitations of the Insurance Policies. For the avoidance of doubt, until such time as the Lender Trust ceases to exist, liquidates or dissolves, the Lender Trustee shall be subject to the duty to cooperate to the extent required by the Insurance Policies. Additionally, for the avoidance of doubt, nothing herein shall affect the claims asserted by any non-Debtor party in the lawsuit styled *Burckhard, et al. v. BNSF Railway Company, et al.*, Case No. 4:13-cv-00038-DLH-CSM (D. N.D. 2013).

11. The Holdback Amount may only be used as set forth in the Motion; *provided, however,* that the Holdback Amount shall include the reserved amount of $1,151,324.75 (the "**Bridgestone Reserve**"), which Bridgestone Reserve has been actually and fully funded and which funding shall not require the approval of the Required Lenders (as defined in the Prepetition First Lien Credit Agreement), in order to satisfy (i) any valid unpaid ordinary course trade payables to Bridgestone Americas Tire Operations, LLC ("**Bridgestone**") incurred by the Debtors between the Petition Date and the closing date of the last sale of the Debtors' assets pursuant to section 363 of the Bankruptcy Code, (ii) any of Bridgestone's alleged cure claims, (iii) any claims arising under that certain Critical Vendor Agreement, dated as of

June 28, 2012, which modified and extended that certain Agreement dated as of March 12, 2009 and amended as of January 3, 2012 and April 12, 2012, by and between Bridgestone and the Debtors and (iv) any claims for payment in connection with the Debtors' sales of "residual" assets ((i) through (iv) collectively, the "**Bridgestone Claims**"), that this Court determines the Debtors are obligated to pay up to the amount of the Bridgestone Reserve, the dispute(s) over which shall be heard by this Court on July 11, 2013 at 10:00 a.m. or such other available date(s) and time(s) as the Debtors and Bridgestone may agree. Unless, until and solely to the extent that this Court determines, by entry of an order approving a consensual resolution of the Bridgestone Claims or otherwise finally adjudicating the validity, amount and priority of the Bridgestone Claims, that such Bridgestone Claims shall be allowed and paid by the Debtors in an amount less than $1,151,324.75, (x) the Bridgestone Reserve shall be used solely for the purpose of satisfying any Bridgestone Claims and (y) the Bridgestone Reserve shall not be used to satisfy the claim(s) of any person or entity other than Bridgestone or for any purpose other than to pay the Bridgestone Claims (including, but not limited to, the payment of professional fees and expenses). In addition, notwithstanding anything in this Order or otherwise to the contrary, Bridgestone shall not be bound by paragraphs 12 through 14 unless and until Bridgestone is actually paid the portion of the Bridgestone Reserve that this Court determines the Debtors are obligated to pay on account of the Bridgestone Claims. Any portion of the Holdback Amount (other than the Bridgestone Reserve) that has not been paid out after three months, shall be turned over to the Lender Trustee, and any portion of the Bridgestone Reserve that the Debtors are not obligated to pay to Bridgestone on account of the Bridgestone Claims, pursuant to order of this Court, shall be turned over to the Lender Trustee upon entry of such order.

12. From and after the date of this Order, the Prepetition First Lien Agent, the Prepetition First Lien Lenders, the Lender Trustee and the Lender Trust (except, with respect to the Lender Trustee and the Lender Trust, as to the retention, storage, transfer and production of records relevant to the Pending Tort Claims to the extent specified in paragraph 10 hereof) shall not be liable for any funding of, or the making of any payments related to, or obligations of the

Debtors' estates, including, without limitation, payment of any claims of any creditors of the Debtors (including, without limitation, any further funding of the Wind-Down Carve Out Account), none of which shall be chargeable to, or be the responsibility of, the Prepetition First Lien Agent, the Prepetition First Lien Lenders, the Lender Trustee or the Lender Trust.

13. From and after the date of this Order, the Prepetition First Lien Agent, the Prepetition First Lien Lenders, the Lender Trustee, the Lender Trust and the Creditors' Committee, and the respective present or former officers, directors, employees, members, attorneys, consultants, advisors and agents of the Debtors, the Prepetition First Lien Agent, the Prepetition First Lien Lenders, the Lender Trustee, the Lender Trust and the Creditors' Committee (hereinafter, the "**Released Parties**"), are hereby released from any and all claims of whatever kind or nature of the Debtors, the Creditors' Committee, creditors of the Debtors' estates and any other party in interest in these Chapter 11 cases, such that, except as otherwise provided herein, all creditors and other parties are barred from pursuing any remedies that they have with respect to claims against any of the parties released pursuant to this paragraph; *provided, however*, that any rights, claims, causes of action or remedies of any party released in this Order against whom a claim or cause of action is brought by a party not granting a release in the Order arising out of or related to such claim or cause of action are hereby preserved. Nothing in this paragraph 13 nor any other provisions of this Order shall release, bar, or otherwise prejudice any claims, causes of action or remedies that any party with a Pending Tort Claim has or may have, including claims against the Debtors or any of the Debtors' insurers, claims seeking recovery under any of the Insurance Policies and/or claims against any non-Debtor, and the release provisions of this paragraph 13 shall not be applicable to any claims that any party with a Pending Tort Claim may have against any of the Released Parties.

14. From and after the date of this Order, none of the Debtors, nor the Prepetition First Lien Agent, the Prepetition First Lien Lenders, the Creditors' Committee or the respective present or former officers, directors, employees, members, attorneys, consultants, advisors and agents of the Debtors, Prepetition First Lien Agent, the Prepetition First Lien

Lenders, and the Creditors' Committee, shall have or incur any liability to any person for any act taken or omitted to be taken in connection with or related to the formation, preparation, dissemination, implementation, confirmation or consummation of the Motion or this Order (other than in contravention of the Motion or the implementation of this Order), or any contract, instrument, release or agreement or document created or entered into, or any other act taken or omitted to be taken in connection with the Motion or this Order.

15. AIG filed an administrative expense claim on or about February 4, 2013, in the amount of $36,225,178.00 and a general unsecured claim on or about April 2, 2012 (together, the "**AIG Claims**"). AIG shall have the right to apply the letter of credit proceeds or any other collateral, offset or recoupment funds it may hold (collectively the "**AIG Security**") to the AIG Claims in any manner it elects in its sole discretion. Without limitation of the foregoing, AIG shall be a beneficiary of the GUC Trust to the extent any of the AIG Claims are allowed general unsecured claims, and any of the AIG Claims that are not satisfied by the AIG Security shall be entitled to share in the GUC Trust Funds *pari passu* with the other beneficiaries of the GUC Trust Agreement up to the amount of the unpaid AIG Claims that are allowed general unsecured claims. The rights of all parties, including the GUC Trust and the Creditors' Committee, are preserved with respect to challenging the AIG Claims, and AIG's rights with respect thereto are also preserved. Notwithstanding anything in this Order to the contrary, AIG shall not be bound by the releases in paragraph 13 of this Order. Furthermore, notwithstanding paragraph 3 of this Order, any arguments that AIG may have regarding the enforceability of any prior Orders entered in these Chapter 11 Cases (other than the 4/30/12 Relief from Stay Order) based on an allegation that AIG was improperly not served with the Motion related to such Orders are hereby preserved, and the Debtors' and all other parties' rights to object to such arguments with respect thereto are also preserved, and this Order does not impair any rights AIG may have had prior to entry of this Order against any non-Debtor entity, and the rights of such non-Debtor entities with respect thereto are hereby preserved.

16. Until the later of (a) resolution of Bridgestone's alleged post-petition claims and (b) the earlier of (x) 90 days from the date of this Order or (y) resolution of all objections to claims filed on behalf of the GUC Trustee and entry of orders on the final fee applications of all professionals retained in the Chapter 11 Cases, the chapter 11 case of Debtor Coach Am Group Holdings Corp. shall remain open solely for the purposes of adjudicating (i) final fee applications and related issues of professionals retained in the Chapter 11 Cases, (ii) any objections to claims filed on behalf of the GUC Trustee, (iii) the *Motion to Compel Los Angeles World Airports to Turnover Property of the Debtors' Estates* [Docket No. 1481], (iv) the resolution of claims held by Sierra Liquidity Fund, LLC and (v) the resolution of Bridgestone's alleged post-petition claims and any other litigation related thereto, and, upon such later date, shall be closed upon the entry of an order closing its chapter 11 case, which order shall be entered upon certification of counsel.

17. Notwithstanding anything in this Order to the contrary, any United States Trustee fees pursuant to 28 U.S.C. § 1930(a)(6) that are not paid from the Holdback Amount shall be paid from the Lender Trust.

18. The Lender Trustee is hereby authorized and directed to pay the Incentive Fee (as defined in the *Motion of the Debtors for an Order Pursuant to 11 U.S.C. §§ 105(a) and 363(b) Authorizing the Debtors, Nunc Pro Tunc to the Petition Date, to (I) Retain Alvarez & Marsal North America, LLC to Provide the Debtors a Chief Restructuring Officer and Certain Additional Personnel and (II) Designate Brian E. Cejka as Chief Restructuring Officer for the Debtors* [Docket No. 100]) to Alvarez & Marsal North America, LLC ("**A&M**") out of the Lender Trust within five (5) days following entry of this Order or as soon thereafter as the Lender Trust has sufficient funds to make such payment. For the avoidance of doubt, the funds in the Lender Trust from and after entry of this Order shall not be deemed property of the Debtors' estates for any purpose, and the payment of the Incentive Fee by the Lender Trustee out of the Lender Trust shall not be deemed a violation of the *Order Pursuant to 11 U.S.C. §§ 105(a) and 363(b) Authorizing the Debtors, Nunc Pro Tunc to the Petition Date, to (I) Retain Alvarez &*

*Marsal North America, LLC to Provide the Debtors a Chief Restructuring Officer and Certain Additional Personnel and (II) Designate Brian E. Cejka as Chief Restructuring Officer for the Debtors* [Docket No. 159].

19. Notwithstanding the dismissal of the Chapter 11 Cases, this Court shall retain jurisdiction with respect to any matters, claims, rights or disputes arising from or relating to the implementation of this or any other Order of this Court entered in the Chapter 11 Cases. Nothing herein shall be deemed consent by AIG to Bankruptcy Court jurisdiction, nor shall it impair AIG's rights with respect to arbitration.

20. To the extent applicable, Rules 6004(h) and 6006(d) of the Federal Rules of Bankruptcy Procedure are waived and this Order shall be effective and enforceable immediately upon entry.

Dated: May 31, 2013
       Wilmington, Delaware

HONORABLE KEVIN GROSS
UNITED STATES BANKRUPTCY JUDGE